**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————x

In re                                                                    Chapter 11

203 W 107 Street LLC, *et al.*,

                                    Debtors.[1]                Case No. 20-12960 (LGB)
                                                                         (Jointly Administered)

—————————————————————————x


# ~~THIRD~~FOURTH AMENDED JOINT PLAN OF LIQUIDATION OF THE DEBTORS


**Dated: April ~~5~~9, 2021**


---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 203 W 107 Street LLC (8429); 210 W 107 Street LLC (3364), 220 W 107 Street LLC (0461), 230 W 107 Street LLC (3686), 124-136 East 117 LLC (6631), 215 East 117 LLC (6961), 231 East 117 LLC (0105), 235 East 117 LLC (8762), 244 East 117 LLC (1142), East 117 Realty LLC (1721) and 1661 PA Realty LLC (5280).  The location of the Debtors' service address is: 1 Battery Park Plaza, Suite 3100, New York, New York 10004, Attention: Ephraim Diamond, as Chief Restructuring Officer.

## TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS; RULES OF INTERPRETATION .................................................... 1

ARTICLE 2 CONSOLIDATION OF DEBTORS FOR VOTING AND DISTRIBUTION
PURPOSES ............................................................................................................................. 15

ARTICLE 3 UNCLASSIFIED CLAIMS ................................................................................... 16

ARTICLE 4 CLASSIFICATION AND TREATMENT OF CLAIMS ....................................... 18

ARTICLE 5 ACCEPTANCE OR REJECTION OF THE PLAN .............................................. 21

ARTICLE 6 MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 22

ARTICLE 7 CAUSES OF ACTION .......................................................................................... 23

ARTICLE 8 PROVISIONS GOVERNING DISTRIBUTIONS, RESOLUTION OF
DISPUTED CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM ............................... 24

ARTICLE 9 EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................... 26

ARTICLE 10 RELEASES AND EXCULPATION .................................................................... 29

ARTICLE 11 CONFIRMATION AND CONSUMMATION OF THE PLAN .......................... 33

ARTICLE 12 EFFECT OF CONFIRMATION ......................................................................... 35

ARTICLE 13 RETENTION OF JURISDICTION ..................................................................... 36

ARTICLE 14 GENERAL PROVISIONS .................................................................................. 38

ARTICLE 15 MODIFICATIONS .............................................................................................. 44

ARTICLE 16 CLOSING THE CASE ........................................................................................ 45

US 169483384v5US 169598932v1

203 W 107 Street LLC, 210 W 107 Street LLC, 220 W 107 Street LLC, 230 W 107 Street LLC, 124-136 East 117 LLC, 215 East 117 LLC, 231 East 117 LLC, 235 East 117 LLC, 244 East 117 LLC, East 117 Realty LLC and 1661 PA Realty LLC (collectively, the "Debtors") propose this joint plan of liquidation for the Debtors. **UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG EACH OF THE DEBTORS, EACH CLAIMANT, THE INTEREST HOLDERS AND EACH OF THEIR RELATED PERSONS (AS ALL SUCH TERMS ARE DEFINED BELOW).**

## ARTICLE 1

## DEFINITIONS; RULES OF INTERPRETATION

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1    "**107th Street Debtors**" shall mean 203 W 107 Street LLC, 210 W 107 Street LLC, 220 W 107 Street LLC, and 230 W 107 Street LLC.

1.2    "**107 Mortgage Claim**" shall mean the Secured Claim of LoanCore on account of indebtedness and obligations owed by the 107th Street Debtors pursuant to the LoanCore Mortgage (with the Building Loan Mortgage recorded on April 26, 2018 and the Consolidated Mortgage recorded on March 13, 2019 and re-recorded on May 3, 2018) and all loan documents related thereto, and secured by the 107 Properties. The 107 Mortgage Claim is in an amount not less than $102,830,141.91 as of the Petition Date. To the extent the 107 Mortgage Claim is undersecured, such Claim will not include amounts for post-petition interest and/or professional fees and expenses.

1.3    "**107 Properties**" shall mean the Debtors' real property located at 203 West 107th Street, New York, New York; 210 West 107th Street, New York, New York; 220 West 107th Street, New York, New York; and 230 West 107th Street, New York, New York.

1.4      "**117 Street Debtors**" shall mean 124-136 East 117 LLC, 215 East 117 LLC, 231 East 117 LLC, 235 East 117 LLC, 244 East 117 LLC, East 117 Realty LLC and 1661 PA Realty LLC.

1.5      "**117 Mortgage Claim**" shall mean the Secured Claim of LoanCore on account of indebtedness and obligations owed by the 117 Street Debtors pursuant to the LoanCore Mortgage (with the Building Loan Mortgage recorded on January 30, 2019 and the Senior Loan Mortgage recorded on January 30, 2019) and all loan documents related thereto, and secured by the 117 Properties.  The 117 Mortgage Claim is in an amount not less than $100,245,624.57 as of the Petition Date.  To the extent the 117 Mortgage Claim is undersecured, such Claim will not include amounts for post-petition interest and/or professional fees and expenses.

1.6      "**117 Properties**" shall mean the Debtors' real property located at 124-136 East 117th Street, New York, New York; 215 East 117th Street, New York, New York; 231 East 117th Street, New York, New York; 235 East 117th Street, New York, New York; 244 East 117th Street, New York, New York; 316, 322 and 326 East 117th Street, New York, New York; and 1661 Park Avenue New York, New York.

1.7      "**Administrative Expense Claim**" shall mean a Claim for costs and expenses of administration of the Bankruptcy Case asserted to be entitled to priority under section 507(a)(2) or section 507(b) of the Bankruptcy Code or any fees and charges assessed against the Debtors' Estates under section 1930, chapter 123, of title 28 of the United States Code.

1.8      "**Administrative Expense Claims Bar Date**" shall mean a date sixty (60) days after the Effective Date.

1.9      "**Affiliated Property Manager**" shall mean Archrock LLC, a New York limited liability company and former property manager of the Properties.

US 169483384v5US 169598932v1

1.10      "**Allowed Administrative Expense Claim**" shall mean an Administrative Expense Claim to the extent such Administrative Expense Claim is an Allowed Claim entitled to priority under section 507(a)(2) or section 507(b) of the Bankruptcy Code and allowed under sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(b) of the Bankruptcy Code.

1.11      "**Allowed Claim**" shall mean, with respect to a Claim, or any portion thereof, in any Class or category specified, a Claim (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection pursuant to the terms of the Plan or (ii) is allowed by a Final Order; or (b) is listed on the Debtors' schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent, and is not otherwise subject to a timely objection.  For the avoidance of doubt, to the extent a Claim is not an Allowed Claim, such Claim is still subject to objection based upon potentially applicable rights of avoidance, setoff, subordination, and any other defenses, all of which rights and defenses are fully preserved in favor of the Debtors, as applicable.

1.12      "**Allowed Priority Non-Tax Claim**" shall mean a Priority Non-Tax Claim to the extent such Priority Non-Tax Claim is an Allowed Claim.

1.13      "**Allowed Priority Tax Claim**" shall mean a Priority Tax Claim to the extent such Priority Tax Claim is an Allowed Claim.

1.14      "**Allowed Professional Fee Claim**" shall mean a Professional Fee Claim to the extent such Professional Fee Claim is an Allowed Claim.

1.15      "**Allowed Other Secured Claim**" shall mean an Other Secured Claim to the extent such Other Secured Claim is an Allowed Claim.

1.16      "**Allowed Unsecured Claim**" shall mean an Unsecured Claim to the extent such Unsecured Claim is an Allowed Claim.

3

1.17    "**Allowed LoanCore Mortgage Claim**" shall mean the LoanCore Mortgage Claim.

1.18    "**Assets**" shall mean with respect to any and all of the Debtors, all of the right, title and interest in and to property of whatever type or nature owned by the Debtors or subsequently acquired by the Debtors, including any property of the Estates for purposes of section 541 of the Bankruptcy Code, including Cash, Causes of Action (including claims for outstanding rent under the Tenant Leases), Tenant Leases as of the Confirmation Date, and other incidental property.

1.19    "**Assignment Documents**" shall have the meaning ascribed to such term in Section 4.5 of this Plan. Copies of the Assignment Documents shall be included in the Plan Supplement.

1.20    "**Avoidance Actions**" shall mean all claims and causes of action which a Debtor has or had the power to assert pursuant to any or all of section 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

1.21    "**Bankruptcy Case**" shall mean these Chapter 11 bankruptcy cases of the Debtors.

1.22    "**Bankruptcy Code**" shall mean Title 11 of the United States Code (11 U.S.C. § 101 et. seq.), as in effect on the Petition Date and as amended during the Bankruptcy Case.

1.23    "**Bankruptcy Court**" shall mean the Court as defined below.

1.24    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court, as in effect on the Petition Date, together with

US 169483384v5US 169598932v1

any and all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

1.25    "**Bar Date**" shall mean the general bar date and the governmental bar date, as applicable, for filing proofs of claim established by the Bar Date Order.

1.26    "**Bar Date Order**" shall mean the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereo*f [ECF No. 12], the *Amended Order Establishing Deadline for Tenants to File Proofs of Claim* [ECF No. 47], or other Order of the Bankruptcy Court establishing a deadline for the filing of proofs of prepetition Claims.

1.27    "**Cash**" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

1.28    "**Causes of Action**" shall mean, with respect to any or all of the Debtors, any and all actions, proceedings, causes of action (including, without limitation, any causes of action of a debtor or debtor in possession under chapter 5 of the Bankruptcy Code), suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured or whether asserted or assertable directly or derivatively, in law, equity or otherwise, and all rights thereunder or attendant thereto, including claims for outstanding rent under the Tenant Leases.

1.29    "**Claim**" shall mean a right to payment against any of the Debtors as set forth in  § 101(5) of the Bankruptcy Code.

1.30    "**Claimant**" shall mean the holder of a Claim.

US 169483384v5US 169598932v1

1.31    "**Class**" shall mean a category of Claims or Interests set forth in Article 3 of this

Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy

Code.

1.32    "**Confirmation Date**" shall mean the date of the entry of the Confirmation Order.

1.33    "**Confirmation Hearing**" shall mean the hearing held pursuant to section 1128

the Bankruptcy Code before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.34    "**Confirmation Order**" shall mean the order of the Court confirming the Plan.

1.35    "**Court**" shall mean the United States Bankruptcy Court for the Southern District

of New York.

1.36    "**Cure**" shall mean the obligations required to be paid in connection with the

assumption and assignment of an Executory Contract pursuant to section 365 of the Bankruptcy

Code, including (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant

to section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the payment,

within a reasonable period of time following the Effective Date, of Cash, with respect to the

assumption and assignment of such Executory Contract, pursuant to section 365(b) of the

Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as

may be determined by the Bankruptcy Court or as agreed upon by the parties, under such Executory

Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable

non-bankruptcy law.

1.37    "**Cure Process**" shall mean resolution or adjudication of the Tenant Cure Claims

through a: (i) resolution of such Tenant Cure Claims by agreement among the Successor Owners

and the tenant asserting such Claim; (ii) adjudication of such Tenant Cure Claim in the New York

Civil Court, Housing Part; (iii) adjudication of such Tenant Cure Claim in the Bankruptcy Court; or

US 169483384v5US 169598932v1

(iv) adjudication of such Tenant Cure Claims in any other court or administrative body of competent jurisdiction.  Pending resolution of the Tenant Cure Claims through the Cure Process, the tenants' and the Successor Owners' rights and defenses under applicable non-bankruptcy law in respect of the Tenant Cure Claims are expressly preserved. To the extent a tenant successfully prosecutes a Tenant Cure Claim in the Housing Court or any other court or administrative body of competent jurisdiction, the tenant is required to seek allowance of such Tenant Cure Claim from the Bankruptcy Court.

1.38     "**Debtors**" shall mean the 107th Street Debtors and the 117th Street Debtors.

1.39     "**Disallowed Claim**" shall mean all or such part of a Claim that is disallowed by a Final Order.

1.40     "**Disbursing Agent**" shall mean the entity in its capacity as disbursing agent responsible for making all distributions required to be made under this Plan.  Pursuant to Section 6.1.2 of this Plan, the Successor Owners shall be the Disbursing Agent under the Plan.

1.41     "**Disclosure Statement**" shall mean that certain disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.42     "**Disputed Claim**" shall mean the whole or any portion of a Claim (a) that is neither an Allowed Claim nor a Disallowed Claim, (b) that is listed as disputed, contingent or unliquidated on the Debtors' schedules or that is otherwise subject to a timely objection or (c) for which a Proof of Claim has been timely filed with the Bankruptcy Court to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

US 169483384v5US 169598932v1

1.43    "**Distribution**" shall mean any distribution made pursuant to the terms of this Plan.

1.44    "**Distribution Date**" shall mean: (i) the initial Distribution made on or before the ninetieth (90) day following the Effective Date; and (ii) any subsequent date on which a Distribution is made.

1.45    "**Distribution Record Date**" shall mean the Confirmation Date or such other date as may be designated in the Confirmation Order.

1.46    "**Effective Date**" shall mean the first business day after the conditions to the Effective Date set forth in Section 11.2 of the Plan have been satisfied or waived in accordance therewith, or such later date determined by the Debtors and LoanCore.

1.47    "**Estate**" shall mean the estate of a Debtor created upon the commencement of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

1.48    "**Executory Contracts**" shall mean "executory contracts" and "unexpired leases" as such terms are used within section 365 of the Bankruptcy Code.

1.49    "**Final Order**" shall mean an order or judgment of the Court (or other court of competent jurisdiction) entered on the docket in the Bankruptcy Case (or on the docket of any other court of competent jurisdiction), which has not been reversed, modified, amended, vacated or stayed and as to which (a) the time to appeal or to seek review, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, review, rehearing, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial,

8

re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for <u>certiorari</u> or move for a new trial, re-argument or rehearing shall have expired; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.50    "**Guarantor**" shall mean Isaac Kassirer, an individual, as guarantor under the LoanCore Mortgages.

1.51    "**HCR**" shall mean New York State Homes and Community Renewal

1.52    "**HPD**" shall mean the New York City Department of Housing and Preservation Development.

1.53    "**Housing Court**" shall mean the Civil Court of the City of New York, County of New York, Housing Part.

1.54    "**Impaired**" shall mean "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.55    "**Interest**" shall mean an existing ownership interest in a Debtor.

1.56    "**Interest Holder**" shall mean a holder and owner of an existing Interest in a Debtor.

1.57    "**Lien**" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation, including but not limited to valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.58    "**LoanCore**" shall mean LoanCore Capital Credit REIT LLC.

1.59    "**LoanCore Mortgage**" shall mean the first mortgages held by LoanCore on the Debtors' Properties pursuant to (i) that certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement dated March 6, 2018, for the benefit of LoanCore and recorded on March 13, 2018 in the City Register of New York County, New York (the "Register's Office") as CRFN 2018000086032, as re-recorded on May 3, 2018 in the City Register of New York County, New York as CRFN 2018000148285, in the Register's Office, (ii) that certain Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated April 17, 2018 by for the benefit of LoanCore, and recorded on April 26, 2018 in the Register's Office as CRFN 2018000138878, (iii) that certain Consolidated, Amended and Restated Senior Mortgage Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated December 13, 2018, for the benefit of LoanCore and recorded on January 30, 2019 in the Register's Office as CRFN 2019000034853, and (iv) that certain Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated December 13, 2018, for the benefit of LoanCore and recorded on January 30, 2019 in the Register's Office as CRFN 2019000192282.

1.60    "**LoanCore Mortgage Claim**" shall mean the 107 Mortgage Claim together with the 117 Mortgage Claim.

1.61    "**Mezzanine Borrowers**" shall mean West 107 Mezz LLC and EEG HGI LLC.

1.62    "**New Mortgages**" shall mean the mortgages against the Properties from and after the Effective Date among the Successor Owners and New Mortgage Lender, which New Mortgages shall be acceptable to LoanCore (or such designee) and the Successor Owners.

1.63    "**New Mortgage Lender**" shall mean the lender(s) under the New Mortgages.

1.64    "**OAG**" shall mean the New York State Office of the Attorney General.

US 169483384v5US 169598932v1

1.65    "**OAG and HCR Cure Claims**" shall mean the OAG's claims under Executive Law 63(12) for rent overcharge and HCR's claims under the Rent Stabilization Law and Code for rent overcharge at the Debtors' Properties.

1.66    "**Other Secured Claim**" shall mean any Claim, other than the LoanCore Mortgage Claim, to the extent reflected in the Schedules or a Proof of Claim as being secured and properly perfected, which is secured by a timely perfected Lien on Collateral, to the extent of the value of the Estate's interest in such Collateral, as determined as of the relevant determination date, including  a lien senior under applicable law to the LoanCore Mortgage Claim.

1.67    "**Permitted Exceptions**" shall mean (i) the Tenant Leases and (ii) normal and customary covenants and easements, excluding Liens for the payment of money; provided, however, that Permitted Exceptions shall not include any covenant or easement which shall, in the reasonable judgment of LoanCore, interfere with the use, operation or ownership of the Properties or otherwise adversely affect their value, ability to be financed or marketability, except as permitted herein

1.68    "**Person**" shall mean an individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

1.69    "**Petition Date**" shall mean December 28, 2020, the date of the filing of the Bankruptcy Case by the Debtors.

1.70    "**Plan**" shall mean this Second Amended Joint Plan of Liquidation of the Debtors, and any and all modifications and/or amendments hereto.

US 169483384v5US 169598932v1

1.71    "**Plan Supplement**" shall mean the compilation of documents, if any, relating to the Plan not included herewith, that the Debtors shall file with the Bankruptcy Court ten (10) days prior to the voting deadline for the Plan (or such later date as approved by the Bankruptcy Court), which documents and exhibits shall be acceptable to LoanCore.   The Plan Supplement shall include, but not be limited to, documents demonstrating and/or evincing: (i) a complete list of litigation pending against the Debtors (to the extent the Debtors are aware of such litigation), including, but not limited to, litigation pending in the Housing Court concerning HPD violations; (ii) the Assignment Documents; (iii) the Successor Owners' names, (iv) the ownership for the Successor Owners, (v) under whose laws the Successor Owners are organized, (vi) the legal characteristics of the Successor Owners' formation, e.g., whether the Successor Owners are formed as limited liability companies and/or corporations, (vii) which of the Debtors' assets to be transferred under the Plan will be transferred to each of the Successor Owners, (viii) information regarding the Successor Owners' capitalization and funding to operate and manage the Properties, and (ix) a term sheet for the New Mortgages summarizing the New Mortgages' key terms, and (x) a description of the adequate assurance that will be provided by the Successor Owners for the payment of Disputed Claims, to the extent such Disputed Claims become Allowed Claims.

1.72    "**Priority Non-Tax Claim**" shall mean any Claim against the Debtors asserted to be entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

1.73    "**Priority Tax Claim**" shall mean any Claim against the Debtors asserted to be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

US 169483384v5US 169598932v1

1.74      "**Professional Fee Claim**" shall mean a claim under sections 327, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of the Debtors' counsel for services rendered or reimbursement of expenses incurred in the Bankruptcy Case on or prior to the Effective Date.

1.75      "**Proof of Claim**" shall mean any Secured Claim or Unsecured Claim that must be filed by a Claimant or Interest Holder by the date(s) designated by the Bankruptcy Court as the last date(s) for filing proofs of claim against the Debtors, or as is otherwise permitted to be filed against any of the Debtors pursuant to a Final Order of the Bankruptcy Court.

1.76      "**Properties**" shall mean the 107 Properties together with the 117 Properties.

1.77      "**Property Management Agreements**" shall mean that certain management agreement among the 107 Debtors and Tri-Hill Management LLC wherein Tri-Hill Management LLC agrees to manage the 107 Properties, together with that certain management agreement among the 117 Debtors and Bronstein Properties, LLC wherein Bronstein Properties, LLC agrees to manage the 117 Properties.

1.78      "**Property Managers**" shall mean Tri-Hill Management LLC together with Bronstein Properties, LLC in their capacities as property managers under the respective Property Management Agreements.

1.79      "**Property Transfer**" shall have the meaning ascribed to such term in Section 4.5 of this Plan.

1.80      "**Related Person**" shall mean, with respect to any Person, its Affiliates (as such term is used in section 101(2) of the Bankruptcy Code), its predecessors, successors and assigns (whether by operation of law or otherwise), and with respect to any of the foregoing, each of their respective present and former Affiliates and each of their respective current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or

13

indirectly), predecessors, successors, assigns, subsidiaries, principals, members, employees, agents, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, employees, managers, advisors and professionals).

1.81    "**Restructuring Support Agreement**" shall mean that certain Restructuring Support Agreement among LoanCore, the 107th Street Debtors, the 117 Street Debtors, the Mezzanine Borrowers, and the Guarantor dated December 28, 2020 and annexed as Exhibit D to the *Joint Disclosure Statement for the Joint Plan of Liquidation of the Debtors* [ECF No. 7].

1.82    "**Secured Claim**" shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

1.83    "**Specified Tenant Claims**" shall mean: (i) claims for abatement of rent; (ii) claims for repairs or the remediation of conditions and violations; and (iii) claims for the return of security deposits.

1.84    "**Successor Owners**" shall mean such entities as designated by LoanCore, and owned and/or controlled by LoanCore with such entities having been established by LoanCore on or before ten (10) days prior to the voting deadline for the Plan (or such later date as approved by the Bankruptcy Court).

1.85    "**Tax Law**" shall mean the New York State Tax Law.

1.86    "**Tenant Cure Claims**" shall mean the Specified Tenant Claims and any other Claims timely asserted by a tenant prior to the Bar Date.

1.87    "**Tenant Leases**" shall mean the Debtors' unexpired leases of residential real property with tenants residing at the Properties.

1.88     "**Unimpaired**" shall mean, with respect to a Claimant or Interest Holder, that such Claimant or Interest Holder is not Impaired.

1.89     "**Unsecured Claim**" shall mean a Claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against property of a Debtor or a Debtor's Estate or (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to section 365 of the Bankruptcy Code, and does not include Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, the LoanCore Mortgage Claim or Other Secured Claims.

1.90     **Rules of Interpretation**.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in this Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (c) any reference to a Claimant includes that Claimant's successors and assigns; (d) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan, as the same may be amended, waived or modified from time to time; (e) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection or clause contained in this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to Section 14.10 of this Plan and the provisions of any contract or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in

US 169483384v5US 169598932v1

accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (i) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

## ARTICLE 2

## CONSOLIDATION OF DEBTORS FOR VOTING AND DISTRIBUTION PURPOSES

2.1      **Limited Substantive Consolidation**.    The Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for purposes of voting on this Plan by Claimants, making distributions to holders of Allowed Claims under this Plan, and confirmation of this Plan.  On the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Bankruptcy Case will be deemed single Claims against all of the Debtors, (iv) all transfers, disbursements, and distributions to Claimants made by any Debtor hereunder will be deemed to be made to satisfy the Claims against all of the Debtors, and (v) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors.  Holders of Allowed Claims shall be entitled to their share of assets available for distribution to such Class without regard to which Debtor originally was liable for such Claim.  Except as set forth in this Article, such limited consolidation shall not, other than for purposes related to this Plan, (x) affect the legal and corporate structures of the Debtors, (y) cause any Debtor to be liable for any Claim or Interest under this Plan for which it otherwise is not liable, and the liability of any Debtor for any such Claim or Interest shall not be affected by such limited consolidation, and (z) affect any Interest in the Debtors.  The Debtors respectfully submit that such limited consolidation will cause no

US 169483384v5US 169598932v1

prejudice to any Claimant or Interest Holder and will instead result in greater convenience for purposes of voting on the Plan and distributions made on Allowed Claims.

## ARTICLE 3

## UNCLASSIFIED CLAIMS

3.1    **Administrative Expense Claims**.  Allowed Administrative Expense Claims shall be paid in full in Cash on the Distribution Date, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing non-tort obligations of the Properties incurred in the ordinary course of business shall be paid in full or performed by Successor Owners in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.

3.2    **Professional Fee Claims**.  Final fee applications for expenses authorized pursuant to section 330 of the Bankruptcy Code shall be filed with the Bankruptcy Court and served on all parties in interest within fifteen (15) days of the Effective Date.  The Successor Owners shall pay the amount of the Allowed Professional Fee Claims.

3.3    **Priority Tax Claims**.  Allowed Priority Tax Claims shall be paid in full in Cash with pre-petition interest and post-petition interest at the statutory rate on the Distribution Date, except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment.

3.4    **United States Trustee Fees**.  Any outstanding United States Trustee fees shall be paid in full in Cash on the Effective Date pursuant to section 1930 of title 28 of the United Sates Code.  Thereafter, the Successor Owners shall pay from Cash in the Estate all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements in and outside of the ordinary course of business, until the earliest of the entry of a final decree closing the chapter 11 cases, dismissal of

17

the chapter 11 case, or conversion of the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code..

3.5    **Bar Date for Administrative Expense Claims**.  Unless otherwise ordered by the Bankruptcy Court, requests for the payment of Administrative Expense Claims (other than non-tort obligations incurred in the ordinary course of business) must be filed with the Bankruptcy Court and served on Successor Owners and its counsel at the address for notices listed in Section 14.9 of this Plan no later than the Administrative Expense Claims Bar Date.  Any Person that is required to file and serve a request for payment of an Administrative Expense Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim or participating in distributions under this Plan on account thereof.  Objections to requests for payment of an Administrative Expense Claim must be filed with the Bankruptcy Court and served on Successor Owners and its counsel at the address for notices listed in Section 14.9 of this Plan no later than ninety (90) days following the Effective Date.

3.6    **Procedure for Substantive Consolidation**.  This Plan shall serve as, and shall be deemed to be, a request for entry of an order substantively consolidating the Debtors' Estates, but solely for purposes of this Plan, including voting on this Plan, making distributions to Claimants under this Plan, and confirmation of this Plan.  If no objection to the limited substantive consolidation of the Debtors' Estates is timely filed and served on or before the deadline for objections to confirmation of the Plan, the Confirmation Order shall serve as the order approving the limited substantive consolidation of the Debtors' Estates, but solely for purposes of this Plan, including voting on this Plan, making distributions to holders of Allowed Claims under this Plan, and confirmation of this Plan.

US 169483384v5US 169598932v1

# ARTICLE 4

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1: Other Secured Claims

4.1     **Classification** – Allowed Other Secured Claims.

4.2     **Treatment** – Each holder of an Allowed Other Secured Claim, in full and final satisfaction, release and settlement of such Claim, shall receive one of the following alternative treatments, at the election of the Successor Owners: (a) payment in full in Available Cash by the Successor Owners on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date the Claim becomes an Allowed Claim; (b) the legal, equitable and contractual rights to which such Claim entitles the holder, unaltered by the Plan; (c) the treatment described in section 1124(2) of the Bankruptcy Code; or (d) the possession of all collateral securing such Claim, without representation or warranty by, or recourse against the Debtors or the Successor Owners.   In the case of clause (d), to the extent that the value of the collateral securing any Allowed Other Secured Claim is less than the amount of such Allowed Other Secured Claim, the undersecured portion of such Claim shall be treated for all purposes under the Plan as an Unsecured Claim in Class 4 and shall be classified as such. Any Allowed Secured Claims senior to the Allowed LoanCore Mortgage Claim shall be Class 1 Claims and shall be satisfied in full as soon as practicable following the Effective Date.

4.3     **Voting** – Unimpaired and deemed to accept the Plan.

### Class 2: LoanCore Mortgage Claim

4.4     **Classification** – Allowed LoanCore Mortgage Claim.

4.5     **Treatment** – On the Effective Date, on account of and in satisfaction of the Allowed LoanCore Mortgage Claim, the Debtors shall transfer title to the Properties and the Assets,

19

pursuant to transfer, conveyance and assignment documents in favor of the Successor Owners in a form satisfactory to Successor Owners (the "Assignment Documents"), directly to the Successor Owners, free and clear of all Claims, Liens, charges, interests and encumbrances other than the Permitted Exceptions, the New Mortgages, and governmental orders and violations of record applicable to the Properties and in effect as of the Effective Date(collectively, the "Property Transfer").

4.6    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 3: Priority Non-Tax Claims

4.7    **Classification** – Priority Non-Tax Claims.

4.8    **Treatment** – In full satisfaction, settlement, release and discharge of and in exchange for the Priority Non-Tax Claims, the amount of the Allowed Priority Non-Tax Claims shall be paid in full in Cash with pre-petition interest and post-petition interest at the statutory rate on the Distribution Date.

4.9    **Voting** – Unimpaired and deemed to accept the Plan.

### Class 4: Unsecured Claims

4.10    **Classification** – Unsecured Claims.  For the avoidance of doubt, this Class does not include the Tenant Cure Claims, but shall include claims for pre-petition attorneys' fees asserted against one or more of the Debtors pursuant to the Tenant Leases and/or any applicable statute including, but not limited to, New York Real Property Law § 234,  claims for contempt fines based on unpaid pre-petition judgments entered against one or more of the Debtors by the Housing Court, and/or damage claims for constructive eviction by tenants who, prior to the Petition Date, vacated their residence at one of the Properties.

US 169483384v5US 169598932v1

4.11      **Treatment** – Allowed Unsecured Claims shall be paid in full in Cash on the Distribution Date, without any pre-petition interest or post-petition interest, provided, however, that the aggregate amount of consideration to be distributed to Class 4 of the Plan will not exceed $670,000.00. If the aggregate Allowed Claims in Class 4 of the Plan exceed $670,000.00, holders of Allowed Unsecured Claims will receive their pro rata share of $670,000.00.

4.12      **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 5: Interest Holders

4.13      **Classification** – Interest Holders.

4.14      **Treatment** – No distribution shall be made or property of the Estates retained by the Interest Holders.  Each Interest Holder's Interest shall be deemed cancelled and extinguished on the Effective Date.

4.15      **Voting** – Impaired and conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Not entitled to vote to accept or reject the Plan.

### ARTICLE 5

### ACCEPTANCE OR REJECTION OF THE PLAN

5.1      **Impaired Classes of Claims and Interests Entitled to Vote**.  Claimants in each Impaired Class of Claims that receive or retain property pursuant to this Plan shall be entitled to vote to accept or reject this Plan.

5.2      **Acceptance by an Impaired Class of Claims**.

5.2.1      Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if, after excluding any Claimant designated pursuant to section 1126(e) of the Bankruptcy Code, (a) Claimants holding at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept such Plan, and

US 169483384v5US 169598932v1

(b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

5.2.2   Except for Claimants and Interest Holders in Classes that are deemed or presumed to have accepted or rejected this Plan pursuant to the terms of this Plan, if Claimants in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject this Plan and notified that a failure of any Claimant in such Impaired Class of Claims to vote to accept or reject this Plan would result in such Impaired Class of Claims being deemed to have accepted this Plan, but no Claimant in such Impaired Class of Claims voted to accept or reject this Plan, then such Class of Claims shall be deemed to have accepted this Plan.

5.3   **Presumed Acceptances by Unimpaired Classes**.  Classes of Claims designated as Unimpaired are conclusively presumed to have voted to accept this Plan pursuant to section 1126(f) of the Bankruptcy Code, and the votes of such Claims will not be solicited.

5.4   **Presumed Rejection of the Plan**.  Impaired Classes of Claims or Interests that do not receive or retain property under the Plan are conclusively presumed to have voted to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and the votes of Claimants or Interest Holders in such Classes will not be solicited.

5.5   **Consensual Confirmation**. The confirmation requirements of section 1129(a) of the Bankruptcy Code must be satisfied jointly with respect to the Debtors.  This Plan shall be deemed one joint chapter 11 plan for all of the Debtors.

5.6   **Reservation of Rights**. Subject to Section 14.11 of this Plan, the Debtors reserve the right to modify or withdraw this Plan, in its entirety or in part, for any reason, including, without limitation, in the event that the Plan is not confirmed.

US 169483384v5US 169598932v1

## ARTICLE 6

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1      **Funding and Administration of Plan**.

6.1.1      On  a Distribution Date, the Successor Owners shall pay the amounts to be paid to Claimants under the Plan.  To the extent necessary, LoanCore will contribute sufficient funds to the Successor Owners to pay such amounts.

6.1.2      The Successor Owners shall be the Disbursing Agent under the Plan without a bond and will generally administer and take all actions in furtherance of the Plan.

6.1.3      On or promptly following the Effective Date, the Debtors shall execute and deliver the Assignment Documents in a form satisfactory to the Successor Owners on the Effective Date.

6.1.4      On the Effective Date, the Successor Owners shall enter into the New Mortgages.

6.2      **Release of Liens**.  On the Effective Date and except as expressly set forth in this Plan, all mortgages, deeds of trust, Liens or other security interests or encumbrances against the Properties shall be released and forever discharged, and all the right, title, and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to LoanCore and its successors and assigns.

6.3      **Property Transfer**.  On the Effective Date, the Debtors shall effect the Property Transfer and thereby transfer and convey directly to the Successor Owners (as applicable) title to each of the Properties, the Causes of Action and the other Assets free and clear of all Claims, Liens, charges, interests and encumbrances, other than Permitted Exceptions, the New Mortgage, and governmental orders and violations of record applicable to the Properties and in effect as of the

23

Effective Date.  Any and all Liens, Claims, and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

      6.4      **Preservation of Insurance**.  This Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtors (including without limitation, the Debtors' Related Persons) or any other person or entity. Likewise, this Plan and the Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or the insurance carriers.

      6.5      **Dissolution of Debtors**.  The Debtors' principals shall take all actions necessary to dissolve the Debtors in accordance with state law promptly following the Effective Date.

## ARTICLE 7

## CAUSES OF ACTION

      7.1      The Debtors waive and release the right to pursue preference claims under section 547 of the Bankruptcy Code.  All other Causes of Action are fully preserved and reserved.  All rights pursuant to section 502, 544, 545, and 546 of the Bankruptcy Code and all Avoidance Actions (except those brought pursuant to section 547 of the Bankruptcy Code) shall be preserved, provided, however, that in connection with the Property Transfer, the Debtors shall transfer the Causes of Action, including the Avoidance Actions (other than those brought pursuant to section 547 of the Bankruptcy Code), to the Successor Owners.

## ARTICLE 8

## PROVISIONS GOVERNING DISTRIBUTIONS, RESOLUTION OF DISPUTED CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM

      8.1      **General**.  Unless a Claimant holding an Allowed Claim against any of the Debtors agrees to a different distribution date or except as otherwise provided herein or as ordered

US 169483384v5US 169598932v1

by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims shall be made on the applicable Distribution Date.  Any Claims that are Disputed Claims will be paid promptly after a Claim is deemed an Allowed Claim.

8.2      **Interest on Claims**.  Except as otherwise expressly provided for in this Plan, the Confirmation Order, other order of the Bankruptcy Court, or required by applicable bankruptcy law, interest accruing after the Petition Date shall not be paid on any Claims, and no Claimant shall be entitled to be paid interest accruing on or after the Petition Date on any Claim.

8.3      **Distribution Record Date**.  As of the close of business on the Distribution Record Date, the Claims register for each of the Classes of Claims or Interests as maintained by the Debtors, its agents or the Bankruptcy Court shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests.  Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of any Claims or Interests occurring on or after the Distribution Record Date.  The Debtors or the Disbursing Agent, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

8.4      **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.

8.4.1      Delivery of Distributions in General.  Distributions on Allowed Claims shall be made at the addresses on the Proofs of Claim filed in this Bankruptcy Case.

8.4.2      Undeliverable and Unclaimed Distributions.

(a)      General.  If the distribution on any Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made on such Allowed Claim unless the Disbursing Agent is notified in writing within ninety

US 169483384v5US 169598932v1

(90) calendar days of the Distribution Date of the then-current address of the Claimant holding
the Allowed Claim.

(b)    <u>Non-Negotiated Checks</u>.  Checks issued on account of Allowed
Claims shall be null and void if not negotiated within ninety (90) calendar days from and after
the date of issuance thereof.  Requests for reissuance of any check must be made directly and in
writing to the Disbursing Agent by the Claimant of the relevant Allowed Claim within the
90-calendar-day period.  After such date, such Allowed Claim (and any claim for reissuance of
the original check) shall be automatically discharged and forever barred, and such funds shall
revert to the Successor Owners, notwithstanding any federal or state escheat laws to the contrary.

8.5    **Withholding and Reporting Requirements**.  In connection with this Plan and
all distributions hereunder, the Disbursing Agent shall comply with all withholding and reporting
requirements imposed by any federal, state, local or foreign taxing authority, and all distributions
hereunder shall be subject to any such withholding and reporting requirements. The Disbursing
Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply
with such withholding and reporting requirements.  All Claimants holding Allowed Claims shall be
required to provide any information necessary to effect information reporting and the withholding
of such taxes.  Notwithstanding any other provision of this Plan, (a) each Claimant holding an
Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive
responsibility for the satisfaction and payment of any tax obligations imposed by any governmental
unit, including income, withholding and other tax obligations, on account of such distribution and
(b) no distribution shall be made to or on behalf of such Claimant's Allowed Claim pursuant to this
Plan unless and until such Claimant has made arrangements satisfactory to the Disbursing Agent for
the payment and satisfaction of such tax obligations.

US 169483384v5US 169598932v1

8.6      **Objections to Claims**.  The Successor Owners may file objections to Claims for a period of 90 days after the Effective Date, with the right to move the Court for cause for an extension of the date it may file objections to Claims.  No partial distributions will be made with respect to a Disputed Claim or a Claim that is contingent or unliquidated.  To the extent that a Disputed Claim becomes an Allowed Claim, such Allowed Claims shall be paid promptly by the Successor Owners.

8.7      **Disputed Claims**.  The Successor Owners shall provide adequate assurance of payment of Disputed Claims in accordance with the terms of treatment of such Claims under the Plan as of the Effective Date and continuing until such time as such Disputed Claims are Allowed or Disallowed.  Such adequate assurance of payment may be in the form of a segregated disputed claims reserves, guaranties from third parties, collateral, or other security, may, as applicable, account for any offsetting obligations which may be owing or owed by tenants, shall be set forth in the Plan Supplement and Confirmation Order, and shall be in a form acceptable to the Successor Owners and the Bankruptcy Court.

## ARTICLE 9

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1      **Rejection of all Executory Contracts other than Tenant Leases**.  On the Effective Date, all Executory Contracts other than Tenant Leases will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, underline such Executory Contract (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or (iii) is an Executory Contract or unexpired lease that is included in a pending motion to assume such Executory Contract or unexpired lease.  Entry of the Confirmation

Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

9.2      **Claims Upon Rejection**.  In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  Any Allowed Claim arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim.

9.3      **Failure to File**.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed forever barred and shall not be entitled to participate in any distribution under the Plan.

9.4      **Tenant Leases**.  The existing claims of the tenants under the Tenant Leases shall be addressed and paid through the Cure Process associated with the Debtors' assumption of the Tenant Leases and assignment thereof to the Successor Owners.  The tenants under the Tenant Leases shall not have any continuing obligations to the Debtors following the assumption and assignment of the Tenant Leases to the Successor Owners pursuant to a Property Transfer.  Any Claims of the tenants against the Debtors which are not addressed through the Cure Process shall be treated in accordance with the terms of the Plan.  For purposes of the Plan, a tenant shall be required to file a proof of claim in respect of any Claim, other than the Specified Tenant Claims (i.e. (i) claims for abatement of rent; (ii) claims for repairs or the remediation of conditions and violations; and (iii) claims for the return of security deposits), in accordance with the terms of the Bar Date Order or such claims shall be extinguished.  For purposes of the Plan, a tenant is not required to file a proof of claim in respect of the Specified Tenant Claims.  The Successor Owners reserve the right to oppose and assert any and all affirmative defenses in response to the Tenant

US 169483384v5US 169598932v1

Cure Claims.  The Successor Owners (as applicable) shall assume all benefits and obligations of the Debtors as landlord under all assigned Tenant Leases from and after the Effective Date and shall pay or perform any Allowed or agreed-upon Tenant Cure Claims that may be due.  For the avoidance of doubt, on the Effective Date, the automatic stay imposed on any Housing Court actions pursuant to section 362 of the Bankruptcy Code shall terminate and no longer apply, and tenants may commence or continue any Housing Court actions including against the Successor Owners.

9.5    **Tenant Security Deposits**.  On or before thirty days after the Effective Date and in accordance with New York General Obligations Law § 7-105, the Successor Owners shall establish segregated accounts for each of the current tenants, subject to each such tenant providing the Successor Owners with Know Your Customer (KYC) verification information and any other documentation which may be reasonably required by the bank at which such segregated accounts are established, to hold the amount of each such tenant's security deposit.  Further, under the Plan, the Successor Owners assume all liabilities in connection with current tenant claims for return of security deposit monies, subject to any defenses and rights the Successor Owners may have under the Tenant Leases and applicable law.  Claims of any former tenants for the return of security deposits shall be treated as Priority Non-Tax Claims in Class 3 and/or General Unsecured Claims in Class 4, depending upon the legal entitlements of such claims.

9.6    **OAG and HCR Cure Claims**.  For purposes of this Plan, the OAG and HCR are not required to file a proof of Claim in respect of the OAG and HCR Cure Claims.  The Debtors and the Successor Owners reserve all rights in respect of the OAG and HCR Cure Claims including the characterization and status of such Claims under this Plan.  The OAG and HCR Cure Claims shall be resolved or adjudicated through the Cure Process through a: (i) resolution of such OAG and

US 169483384v5US 169598932v1

HCR Cure Claims by agreement among the Successor Owners and the OAG and HCR; or (ii) adjudication of such OAG and HCR Cure Claims in any other court or administrative body of competent jurisdiction. Pending resolution or adjudication, the OAG's, HCR's and the Successor Owners' rights and defenses under applicable law in respect of the OAG and HCR Cure Claims are expressly preserved.

**ARTICLE 10**

**RELEASES AND EXCULPATION**

10.1    **Exculpation**. To the fullest extent permitted under applicable law, as of and following the Effective Date, the Debtors, the Property Managers, the Affiliated Property Manager, and each of their Related Persons (to the extent a claim arises from actions taken by such Related Person in its capacity as a Related Person of such Entity) shall not incur any liability to any Person for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, including this Plan, pursuit of confirmation of any plans of reorganization or liquidation, including this Plan, the administration, consummation and implementation of the Plan or the property to be distributed under the Plan or the Disclosure Statement, except for claims related to any act or omission by the Debtors, the Property Managers, the Affiliated Property Manager, and/or each of their Related Persons that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, gross negligence, or violation of any penal law.  In all respects, any of the Debtors, the Property Managers, the Affiliated Property Manager, and each of their Related Persons shall be entitled to rely upon the advice of counsel and financial advisors with respect to their duties and responsibilities under, or in connection with, the Bankruptcy Case, the Plan, and the administration thereof.  Nothing herein shall prevent or prohibit the federal, state or local governments from enforcing their respective police and regulatory powers under applicable

US 169483384v5US 169598932v1

federal and state laws against the Debtors, the Property Managers, the Affiliated Property Manager, each of their Related Persons, the Properties and/or the Successor Owners.  For the avoidance of doubt, nothing contained in this section shall exculpate the Debtors, the Property Managers, the Affiliated Property Manager, and each of their Related Persons from liability resulting from conduct which occurred prior the Petition Date in connection with the operation and maintenance of the Properties.

10.2    **Intentionally Omitted**.

10.3    **Confirmation Injunction**.  Other than such liabilities and obligations provided under the Plan, (a) the rights afforded herein and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors, or any of the Debtors' Related Persons or any of their assets and properties, (b) on the Distribution Date, all such Claims against the Debtors and each of the Debtors' Related Persons shall be satisfied and released in full, and (c) all Persons shall be precluded from asserting and shall be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against the Debtors, the Successor Owners, LoanCore, the New Mortgage Lender, the Property Managers, the Affiliated Property Manager, or any of their respective Related Persons or their assets or properties, including the Properties and Assets, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date; provided, however, that nothing in this Section 10.3 shall enjoin or otherwise limit any claims against the Successor Owners in respect of their obligations under this Plan including in respect of the payment of Allowed Claims, obligations arising under the Tenant Leases from and after the Effective Date and in respect of the Cure,

31

obligations relating to the New Mortgages, and all non-monetary violations of record subject to which the Properties are being transferred. Nothing herein shall prevent or prohibit the federal, state or local governments from enforcing their respective police and regulatory powers under applicable federal and state laws against the Debtors, the Property Managers, the Affiliated Property Manager, each of their Related Persons, the Properties and/or the Successor Owners.

10.4 **Injunction Against Interference with Plan**. Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtors and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided*, that nothing herein or in the Confirmation Order shall preclude, limit, restrict or prohibit any party in interest from seeking to enforce the terms of the Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

10.5 **Release by LoanCore, the Successor Owners, and the New Mortgage Lender of Debtors, Mezzanine Borrowers, Guarantor, and Affiliated Property Manager**. Except as otherwise expressly provided in this Plan or the Confirmation Order, on the Effective Date and effective simultaneously with the effectiveness of this Plan, each of LoanCore, each Successor Owner, and the New Mortgage Lender shall be deemed to have unconditionally released the Debtors, the Mezzanine Borrowers, the Guarantor, the Affiliated Property Manager, and their respective Related Persons of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action (including, but not limited to, the Avoidance Actions) and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise,

US 169483384v5US 169598932v1

that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or before the Effective Date that are in connection with the Debtors, the Mezzanine Borrowers, the Guarantor, the Affiliated Property Manager or any of them, or their respective assets, property and Estates, the Bankruptcy Case or the Plan, or Disclosure Statement.  For the avoidance of doubt, nothing contained in this Section 10.5 shall in any way be construed to relieve the Debtors, the Mezzanine Borrowers, or the Guarantor from their post-Effective Date specific-performance obligations to LoanCore under the Restructuring Support Agreement, but in no event shall a claim be made for damages.

10.6     **Release by Debtors, Mezzanine Borrowers, Guarantor, and Affiliated Property Manager of LoanCore, the Successor Owners, and the New Mortgage Lender**.

Except as otherwise expressly provided in this Plan or the Confirmation Order, on the Effective Date and effective simultaneously with the effectiveness of this Plan, each of the Debtors, the Mezzanine Borrowers, the Guarantor, the Affiliated Property Manager, and their respective Related Persons shall be deemed to have unconditionally released LoanCore, each Successor Owner, the New Mortgage Lender, and their respective Related Persons of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or before the Effective Date that are in connection with LoanCore and Successor Owners or any of them, or their respective assets, property and Estates, the Bankruptcy Case or the Plan, or Disclosure Statement; provided, however, that nothing in this Section 10.6 shall release each Successor Owner from its obligations under this Plan including in

33

respect of the payment of Allowed Claims, obligations arising under the Tenant Leases from and after the Effective Date and in respect of the Cure, and obligations relating to the New Mortgages.

10.7    **Release by Mezzanine Borrowers, Guarantor, and Affiliated Property Manager of Debtors**.  Except as otherwise expressly provided in this Plan or the Confirmation Order, on the Effective Date and effective simultaneously with the effectiveness of this Plan, each of the Mezzanine Borrowers, the Guarantor, the Affiliated Property Manager, and their and each Debtor's respective Related Persons shall be deemed to have unconditionally released the Debtors and their respective Related Persons of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or before the Effective Date that are in connection with the Debtors or any of them, or their respective assets, property and Estates, the Bankruptcy Case or the Plan, or Disclosure Statement.  Further, no claims of the Mezzanine Borrowers, the Guarantor, the Affiliated Property Manager, or their and each Debtor's respective Related Persons shall be entitled to any distribution or payment under the Plan.

# ARTICLE 11

## CONFIRMATION AND CONSUMMATION OF THE PLAN

11.1    **Condition to Confirmation**.

11.1.1    The Bankruptcy Court shall have entered a Confirmation Order in form and substance satisfactory to the Debtors and LoanCore; and

11.1.2    the aggregate amount of asserted Claims against the Debtors' Estates is in an amount acceptable to LoanCore.

11.2    **Conditions To Effective Date**.  This Plan shall not become effective and the Effective Date shall not occur unless and until the Debtors and LoanCore are satisfied that:

(a) the Confirmation Order has become a Final Order;

(b) intentionally omitted;

(c) all documents and agreements necessary to implement this Plan on the Effective Date shall have been executed and delivered in form and substance satisfactory to LoanCore and all transactions and other actions required to be taken in connection with the Effective Date shall have occurred;

(d) for each Debtor, the Debtors shall have delivered to LoanCore monthly financial statements from January 1, 2020 through and including the date the Property Management Agreements are executed installing the Property Managers to manage the Properties;

(e) to the extent in their possession, for each Debtor, the Debtors and the Guarantor shall have delivered to LoanCore any financial and/or operating information addressing rental payment arrears, current rental payment delinquencies, and all other rent collection information from October 1, 2020 through and including the date the Property Management Agreements are executed installing the Property Manager to manage the Properties; and

(f) the Successor Owners shall have obtained and closed on the New Mortgages for the Properties.

US 169483384v5US 169598932v1

11.3 **Waiver of Conditions**. Each of the conditions set forth in <u>Sections 11.1, 11.2(a), and 11.2(c)</u> of this Plan may be waived in whole or in part solely by the Debtors and LoanCore without the need for notice or a hearing (other than any condition the waiver of which is proscribed by law). Each of the conditions set forth in <u>Sections 11.2(b) and 11.2(d)-(e)</u> may be waived in whole or in part by LoanCore in its sole discretion without the need for notice or a hearing.

11.4 **Consequence if Confirmation Order is Vacated**. If the Confirmation Order is vacated, this Plan shall be null and void in all respects.

## ARTICLE 12

## EFFECT OF CONFIRMATION

12.1 **Binding Effect**. Subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under this Plan and whether such holder has accepted this Plan.

12.2 **Transfer and Vesting of Assets**. Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all assets and property of the Debtors (including the Properties and the insurance policies and any rights thereunder) shall be transferred to and vest in the Successors Owners, in accordance with Section 4.5 of this Plan, free and clear of all Claims, Liens, charges, and other interests, except as otherwise provided herein. Upon the Effective Date, the Successors Owners may operate the Properties and use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as otherwise provided herein.

US 169483384v5US 169598932v1

## ARTICLE 13

## RETENTION OF JURISDICTION

13.1     **Retention of Jurisdiction**.    Pursuant to sections 105(c) and 1142 of the
Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the
Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising
under, arising in or out of, or relating to the Debtors' Bankruptcy Case and this Plan to the fullest
extent permitted by law, including, but not limited to, among other things, jurisdiction to:

13.1.1     allow, disallow, determine, liquidate, classify, estimate or establish the
priority or secured or unsecured status of any Claim or Interest, including the resolution of any
request for payment of any Administrative Expense Claim, the resolution of any objections to the
allowance or priority of Claims or Interests, and the determination of any Cure amount;

13.1.2     resolve any matters related to the rejection of any Executory Contract
and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

13.1.3     hear and determine all applications for compensation and
reimbursement of expenses of professionals under section 330, 331, 363, 503(b), 1103 and
1129(c)(9) of the Bankruptcy Code;

13.1.4     ensure that distributions to Claimants holding Allowed Claims are
accomplished pursuant to the provisions of this Plan;

13.1.5     decide or resolve any motions, adversary proceedings, contested or
litigated matters and any other matters and grant or deny any applications involving the Debtors
that may be pending on the Effective Date;

13.1.6     enter such orders as may be necessary or appropriate to implement,
enforce, or consummate the provisions of this Plan and all contracts, instruments, releases and

US 169483384v5US 169598932v1

other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

13.1.7    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

13.1.8    consider any modification of the Plan under section 1127 of the Bankruptcy Code or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan or the Confirmation Order, or enter any order in aid of the Confirmation Order pursuant to section 1142 of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate this Plan;

13.1.9    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Plan or the Confirmation Order;

13.1.10    hear and determine all Causes of Action to the full extent permitted under 28 U.S.C. §1334 and 28 U.S.C. §157;

13.1.11    enter an order concluding and terminating the Bankruptcy Case;

13.1.12    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case; and

US 169483384v5US 169598932v1

13.1.13    hear and determine such other matters as may be provided in the

Confirmation Order or as may be authorized under the Bankruptcy Code.

## ARTICLE 14

## GENERAL PROVISIONS

14.1    **Headings**.  The headings in the Plan are for convenience of reference only and

shall not limit or otherwise affect the meaning of the Plan.

14.2    **No Payment of Disputed Claims**.  This Plan contemplates the payment of

Allowed Claims only.  No Disputed Claims shall be paid, nor shall distributions be made to a

Claimant holding a Disputed Claim, until such Disputed Claim, or any part thereof, becomes an

Allowed Claim, if ever.

14.3    **Exemption from Transfer Taxes**.

(a)    Pursuant to section 1146(a) of the Bankruptcy Code: (i) the issuance,

transfer, or exchange of notes or equity securities under this Plan; (ii) the creation of any

mortgage, deed of trust, lien, pledge, or other security interest including the New Mortgages

issued in connection with the Property Transfer; (iii) the making or assignment of any contract,

lease or sublease; (iv) the making or delivery of any deed or other instrument of transfer or other

consideration under, in the furtherance of, or in connection with this Plan, including, without

limitation, the Property Transfer, the Assignment Documents and any other payments and

transfers pursuant to this Plan by the Debtors directly to the Successor Owners; and (v) delivery

of deeds, bills of sale, or other transfers of tangible property, are exempt from and will not be

subject to any stamp tax, or other similar tax or any tax held to be a stamp tax or other similar tax

by applicable law.    For the avoidance of doubt, the Plan does not seek any such relief beyond

the scope of section 1146(a) of the Bankruptcy Code.

US 169483384v5US 169598932v1

(b)      All filing officers (including without limitation, the City Register and/or County Clerk of New York County, City of New York) shall be, and hereby are directed to: (i) accept for recording and record, any and all deeds and other documents which are presented to them for recording, including the Assignment Documents and the New Mortgages, immediately upon presentation thereof, with regard to the transactions effectuated pursuant to this Plan, without the payment of any New York State Real Estate Transfer Tax imposed under Article 31 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code, any mortgage recording tax or any other tax within the purview of section 1146(a) of the Bankruptcy Code including with respect to the New Mortgages, and without the requirement of presentation of any affidavit or form with respect to any tax imposed under Article 31 of the Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code with respect to the transactions effectuated pursuant to this Plan; and (ii) except as otherwise provided in the Plan and the Confirmation Order, cancel and discharge of record all liens, encumbrances, claims and other adverse interests in or against the Properties and/or Assets.

(c)      The Property Transfer by the Debtors to the Successor Owners (which shall be a direct transfer from the Debtors to the Successor Owners) and the accompanying recording of the New Mortgages shall be exempt from stamp tax or similar tax, including, but not limited to, the transfer taxes and mortgage recording tax referenced above pursuant to section 1146(a) of the Bankruptcy Code.  However, neither a subsequent transfer of the Properties by the Successor Owners to a new owner of the Properties nor any new mortgage recorded after the Property Transfer (other than the New Mortgages) shall fall within the scope of relief requested by this Plan and/or the Confirmation Order; provided, however, nothing in this Plan and/or the

US 169483384v5US 169598932v1

Confirmation Order will limit the application of Section 255 of the Tax Law to the extent such section exempts any such new mortgage from mortgage recording tax by reason of the fact that such new mortgage does not secure any new principal indebtedness not secured by the New Mortgages.

(d)    All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Properties, the Assets, the Debtors, the Successor Owners, the New Mortgage Lender, LoanCore, or their respective Related Persons, any taxes from which the transactions effectuated pursuant to this Plan are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code, including but not limited to, New York State Real Estate Transfer Taxes, New York City Real Property Transfer Taxes, and applicable mortgage recording tax, and any penalties, interest, or additions to any tax related thereto.

(e)    The City Register and/or County Clerk of New York County office shall record the deed of each Property, and other similar conveyance documents required to be delivered under this Plan without the payment of any stamp tax, transfer tax, or similar tax, and without the presentation of affidavits, instruments, or returns otherwise required for recording or filing pursuant to section 1146(a) of the Bankruptcy Code.

14.4    **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

14.5    **Other Actions**.  Nothing contained herein shall prevent the Debtors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

41

14.6    **Severability of Plan Provisions**.  Except for the releases in paragraph 10.4, if any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, solely at the request of the Debtors with the consent of LoanCore, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.7    **Successors and Assigns**.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, each of the Debtors, LoanCore, the Successor Owners, the Claimants, the tenants under the Tenant Leases, the Interest Holders and all Related Persons of such entities.

14.8    **Revocation, Withdrawal or Non-Consummation**.  The Debtors reserve the right to revoke or withdraw its support for this Plan as to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans of liquidation or reorganization.  If the Debtors revoke or withdraw this Plan as to any or all of the Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) the Plan shall be null and void in all respects and (b) nothing contained in the Plan (i) shall prejudice in any manner the rights of the Debtors or (ii) constitute an admission of any sort by the Debtors.

14.9    **Notice**.  To be effective, all notices required or permitted to be provided under the

Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage

prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed

as follows:

<u>Notice to the Debtors</u>

203 W 107 Street LLC, 210 W 107 Street LLC, 220 W 107 Street LLC, 230 W 107 Street LLC,
124-136 East 117 LLC , 215 East 117 LLC, 231 East 117 LLC, 235 East 117 LLC, 244 East 117
LLC, East 117 Realty LLC, and 1661 PA Realty LLC (5280
1 Battery Park Plaza, Suite 3100
New York, New York 10004
Attention: Ephraim Diamond, Chief Restructuring Officer
Email: ephraim@arbelcapital.com

with a copy to

Backenroth Frankel & Krinsky, LLP
Attention: Mark A. Frankel.
800 Third Avenue, 11th Floor
New York, New York 10022
Email: mfrankel@bfklaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

and

<u>Notice to the Guarantor</u>

Sukenik, Segal & Graff, P.C.
Attention: David C. Segal
450 Seventh Avenue, 42nd floor
New York, New York  10123
212-725-9300
Email: davidsegal@ssglaw.com

*Counsel to the Guarantor*

and

<u>Notice to LoanCore and the Successor Owners</u>

LoanCore Capital Credit REIT LLC

US 169483384v5US 169598932v1

c/o LoanCore Capital
55 Railroad Avenue, Suite 100
Greenwich, Connecticut  06830
Attention:  Brett Kaplan
Facsimile No.:  (203) 861-600
E-mail:  BKaplan@LoanCore.com

with a copy to

LoanCore Capital Credit REIT LLC
c/o LoanCore Capital
55 Railroad Avenue, Suite 100
Greenwich, Connecticut  06830
Attention:  Notices
E-mail:  notices@loancore.com

with a copy to

Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
Attention: Stephen Gliatta, Esq. and Benjamin Mintz, Esq.
Email: steve.gliatta@arnoldporter.com and Benjamin.Mintz@arnoldporter.com

*Counsel to the LoanCore and the Successor Owners*

14.10   **Governing Law**.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that a relevant document provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

14.11   **Reservation of Rights**.  Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order.  The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors in furtherance of seeking confirmation of this Plan shall not be and shall not be deemed to

44

US 169483384v5US 169598932v1

be an admission or waiver of any rights of the Debtors with respect to the Claimants, Interest

Holders or the Related Persons of such entities.

**ARTICLE 15**

**<u>MODIFICATIONS</u>**

15.1    **<u>Modification of Plan</u>**.  The Debtors may seek amendments or modifications to

the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the

Confirmation Date.  After the Confirmation Date, the Debtors may seek to remedy any defect or

omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner

as may be necessary to carry out the purposes and intent of the Plan.  A Claimant that has accepted

this Plan shall be deemed to have accepted this Plan as altered, amended or modified, if the

proposed alteration, amendment or modification does not materially and adversely change the

treatment of the Claim.

*[Remainder of the page intentionally left blank]*

US 169483384v5US 169598932v1

## ARTICLE 16

## CLOSING THE CASE

16.1    Upon substantial consummation, the Debtors may move for a final decree to close

the Bankruptcy Case and to request such other orders as may be just.

Dated:    New York, New York
          April 59, 2021

## DEBTORS:

**203 W 107 STREET LLC**
**210 W 107 STREET LLC**
**220 W 107 STREET LLC**
**230 W 107 STREET LLC**
**124-136 EAST 117 LLC**
**215 EAST 117 LLC**
**235 EAST 117 LLC**
**244 EAST 117 LLC**
**231 EAST 117 LLC**
**EAST 117 REALTY LLC**
**1661 PA REALTY LLC,**
each a Delaware limited liability company


By:    _____
       Name: Ephraim Diamond
       Title: Chief Restructuring Officer

US 169483384v5US 169598932v1

Document comparison by Workshare 10.0 on Thursday, April 8, 2021 1:25:41 PM

| Input: | |
|---|---|
| Document 1 ID | iManage://USDMS/US/169483384/5 |
| Description | #169483384v5<US> - LCC - Third Amended Plan of Liquidation |
| Document 2 ID | iManage://USDMS/US/169598932/1 |
| Description | #169598932v1<US> - LCC - Final Fourth Amended Plan of Liquidation |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 13 |
| Deletions | 8 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 21 |