Mark Frankel                                                    Hearing Date and Time:
Backenroth Frankel & Krinsky, LLP                              December 21, 2021 10:00 a.m.
800 Third Avenue, Floor 11
New York, New York  10022
(212) 593-1100
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                          Chapter 11

      203 W 107 Street LLC, *et al*,[1]                      Case No.  20-12960 (SCC)
                                                               Jointly Administered
                       Debtors.
--------------------------------------------------------x

## NOTICE OF HEARING

PLEASE TAKE NOTICE, that  a telephonic hearing will be held on November 9, 2021 at 10:00 a.m. (the "Hearing") before the Honorable Lisa G. Beckerman through Court-Solutions LLC to consider the annexed motion (the "Motion") for entry of an order pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving the settlement of certain tenant claims filed against the Debtors' estates pursuant to that certain settlement agreement by and among the above captioned Debtors, LoanCore Capital Credit REIT LLC, 203 W 107 Street Owner LLC, 210 W 107 Street Owner LLC, 220 W 107 Street Owner LLC, 230 W 107 Street Owner LLC, 124-136 East 117 Owner LLC, 215 East 117 Owner LLC, 231 East 117 Owner LLC, 235 East 117 Owner LLC, 244 East 117 Owner LLC, East 117 Realty Owner LLC, and 1661 PA Realty Owner LLC, and each of those tenants identified in Exhibit B to the Motion, and granting related relief.

PLEASE TAKE FURTHER NOTICE, that objections, if any, must be made in writing, served upon the undersigned Debtors' counsel, and filed with the Clerk of the Bankruptcy Court, at least seven days before the Hearing.

Dated: New York, New York
      November 17, 2021

                            BACKENROTH FRANKEL & KRINSKY, LLP
                            Attorneys for the Debtors

                 By:    s/ Mark Frankel
                       800 Third Avenue
                       New York, New York  10022
                       (212) 593-1100

---

1 The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:     203 W 107 Street LLC (8429); 210 W 107 Street LLC (3364), 220 W 107 Street LLC (0461), 230 W 107 Street LLC (3686), 124-136 East 117 LLC (6631), 215 East 117 LLC (6961), 231 East 117 LLC (0105), 235 East 117 LLC (8762), 244 East 117 LLC (1142), East 117 Realty LLC (1721) and 1661 PA Realty LLC (5280).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 203 W 107 STREET LLC, *et al.*,[1] | ) | Case No. 20-12960 (LGB) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

_____

## DEBTORS' MOTION FOR AN ORDER APPROVING THE SETTLEMENT OF CERTAIN TENANT CLAIMS

The debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned

chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby

submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto

as Exhibit A (the "9019 Order"), pursuant to section 105(a) of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), approving the settlement (the "Settlement") of certain tenant claims (the

"Tenant Claims") identified in Exhibit B to this Motion filed against the Debtors' estates pursuant

to that certain form of settlement agreement (the "Settlement Agreement")[2] by and among the

Debtors, LoanCore Capital Credit REIT LLC ("LoanCore") on behalf of itself and 203 W 107

Street Owner LLC, 210 W 107 Street Owner LLC, 220 W 107 Street Owner LLC, 230 W 107

Street Owner LLC, 124-136 East 117 Owner LLC, 215 East 117 Owner LLC, 231 East 117 Owner

LLC, 235 East 117 Owner LLC, 244 East 117 Owner LLC, East 117 Realty Owner LLC, and 1661

PA Realty Owner LLC (collectively, the "Successor Owners"), and each of those tenants identified

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  203 W 107 Street LLC (8429); 210 W 107 Street LLC (3364), 220 W 107 Street LLC (0461), 230 W 107 Street LLC (3686), 124-136 East 117 LLC (6631), 215 East 117 LLC (6961), 231 East 117 LLC (0105), 235 East 117 LLC (8762), 244 East 117 LLC (1142), East 117 Realty LLC (1721) and 1661 PA Realty LLC (5280).

[2] Capitalized terms used but not otherwise defined in the Motion shall have the meanings ascribed to such terms in the *Fourth Amended Joint Plan of Liquidation of the Debtors* [ECF No. 67] (the "Plan") and/or the Settlement Agreement, as applicable.  The Settlement Agreement is attached to the Motion as Exhibit D.

in Exhibit B to this Motion (each, a "Settling Tenant" and collectively, the "Settling Tenants") and granting related relief. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Ephraim Diamond, the Debtors' Chief Restructuring Officer, attached hereto as Exhibit C (the "Diamond Declaration"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors, LoanCore, the Successor Owners, and the Settling Tenants (collectively, the "Parties") negotiated the terms of the Settlement over the course of several months to resolve, among other things, the Tenant Claims, the Rent Strike (as defined below), and the Arrearage Obligations (as defined below).[3] The terms in the Settlement Agreement memorialize the Settlement reached among the Parties and are the culmination of extensive dialogue and negotiations among them. The Settlement Agreement serves as a template for the Settlements with the Settling Tenants. It is contemplated that each individual Settling Tenant will enter into a separate settlement agreement based on the Settlement Agreement, with the particular amounts to be used in the individual settlement agreements set forth in Exhibit B.[4]

2.      The Debtors seek this Court's approval of, and authorization to enter into, the Settlement Agreement with each of the Settling Tenants. The Debtors believe that entry into the Settlement Agreement with each of the Settling Tenants is in the best interests of their estates because it is an important step in resolving a significant number of Tenant Claims (i.e., 49 claims asserting in excess of $1 million) filed in connection with the Settling Tenants' residency at one or more of the Properties, while at the same time addressing the Arrearage Obligations (as defined

---

[3] Each of the Settling Tenants is represented by counsel. Depending upon the Settling Tenant, such Settling Tenant is represented by counsel from one or more of Manhattan Legal Services, Morrison & Foerster LLP, Lenox Hill Neighborhood, and/or Fried, Frank, Harris, Shriver & Jacobson LLP (collectively, "Tenants' Counsel").

[4] In addition to the Settling Tenants' names, Exhibit B indicates the claim number for each Tenant Claim, the Debtor against whom the Tenant Claim was filed, and the settlement number amounts to be inserted into the individual settlement agreement for each of the Settling Tenants.

below) owed by many of the Settling Tenants to the Debtors, and, as applicable, concluding the

Rent Strike (as defined below) so that increased rent monies begin to flow into the Debtors'

accounts.  It is contemplated that the Settlement Agreements with the individual Settling Tenants

will be implemented and effective following this Court's approval of this Motion, and will not be

conditioned upon confirmation of the Debtors' Plan.

3.       Additionally, once the Settlement of the Tenant Claims is approved, the Debtors

will have secured support for confirmation of the Plan from each of the Settling Tenants and, more

broadly, from the 124-136 East 117th Street Tenants' Association (the "Tenants' Association"), a

significant party in interest in these Chapter 11 Cases.  In light of the foregoing, the Debtors

respectfully request entry of an order approving the Settlement and authorizing the Debtors to enter

into the Settlement Agreement with each of the Settling Tenants.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334 and the "Amended Standing Order of Reference" for the Southern District of New York,

dated January 31, 2012.  This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in

this district under 28 U.S.C. §§ 1408 and 1409.

5.       The statutory predicates for the relief requested herein are Bankruptcy Code

section 105(a) and Bankruptcy Rule 9019.

## BACKGROUND

6.       On December 28, 2020 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief in the United States Bankruptcy Court for the Southern District of New York

(the "Court") under chapter 11 of the Bankruptcy Code.

7.      No committee has been appointed in the Chapter 11 Cases and no request for the appointment of a trustee or examiner has been made.

8.      On December 30, 2020, the Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 12] (the "Bar Date Order").  Pursuant to the Bar Date Order, the Court established February 16, 2021 (the "General Claims Bar Date") as the deadline for non-governmental units to file proofs of claim against the Debtors' Estates.  Thereafter, the Tenants' Association informally contacted the Debtors requesting an extension of the General Claims Bar Date.  The Debtors agreed to extend the General Claims Bar Date, solely with respect to current and former tenants at the Properties, to March 2, 2021 (the "Tenant Bar Date").  On February 12, 2021, the Court So Ordered the *Amended Order Extending Deadline for Tenants to File Proofs of Claim* [ECF No. 47], which extended the General Claims Bar Date to the Tenant Bar Date, solely for current and former tenants at the Properties.

9.      On April 16, 2021, the Court entered the *Order Approving (I) The Adequacy of the Fourth Amended Joint Disclosure Statement for the Fourth Amended Joint Plan of Liquidation of the Debtors; (II) Solicitation and Notice Procedures; (III) Form of Ballot and Notice in Connection Therewith; and (IV) Certain Dates with Respect Thereto* [ECF No. 69] (the "Disclosure Statement Order").  Among other things, the Disclosure Statement Order approved the adequacy of the Debtors' *Fourth Amended Joint Disclosure Statement for the Fourth Amended Joint Plan of Liquidation of the Debtors* [ECF No. 68] (the "Disclosure Statement") in connection with the Plan and scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing").[5]  The Disclosure Statement provides a fulsome discussion of the events leading to the

---

[5] On December 21, 2021, the Court will conduct a status conference with respect to the Confirmation Hearing.

Debtors' commencement of these Chapter 11 Cases and a description of conditions at the Properties, such conditions forming the basis for many of the Tenant Claims.

10.     On or prior to the Tenant Bar Date, Tenants' Counsel filed approximately fifty-five (55) proofs of claim on behalf of current and former tenants at the Properties asserting aggregate claims in excess of $1.51 million.  Many of the Settling Tenants have participated in a formal rent strike withholding their monthly rent payments (the "Rent Strike") and those and many other Settling Tenants owe arrearages to the Debtors for nonpayment of rent (the "Arrearage Obligations").

### SUMMARY OF THE SETTLEMENT[6]

11.     As noted, the Settlement Agreement serves as a template for the individual settlements to be entered into by the respective settling parties and each individual Settling Tenant. The material terms of the Settlement Agreement are:

   a. *Treatment of Tenant Security Deposits*.  For current tenants, the Successor Owners shall establish a segregated account maintaining each Settling Tenant's security deposit promptly following the Effective Date of the Plan.  For former tenants, the Successor Owners shall pay each Settling Tenant's security deposit promptly following the Effective Date of the Plan.  The Parties have agreed on the applicable amount of each Settling Tenant's security deposit (which at minimum will be not less than the monthly rent due under the Settling Tenant's original lease).

   b. *Settlement of Tenant Claims*.  Each Settling Tenant will have an Allowed Tenant Cure Claim (the "Settlement Amount") in the amount set forth on Exhibit B for each such Settling Tenant and the remainder of the Tenant Claim shall be disallowed.   Depending on the amount of the Settling Tenant's Arrearage Obligation, the Settlement Amount shall either be applied in reduction of the Settling Tenant's Arrearage Obligation or as a rent credit.  In the case of a Settling Tenant who is a former tenant with no Arrearage Obligation, the Settlement Amount shall be paid to the Settling Tenant.

   c. *Rent Forgiveness*.  For Settling Tenants with Arrearage Obligations that do not qualify for assistance pursuant to the New York State Emergency Rental Assistance Program ("ERAP"), the Settling Tenant's Arrearage Obligation shall be reduced by

---

[6] To the extent there is a conflict between the summary below and the express terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern.

up to $25,000 (the "Rent Forgiveness") provided that such Settling Tenant pays timely rent for the period covering August through October 2021 (with the first payment to be due following the Court's approval of the Settlement). For Settling Tenants with Arrearage Obligations that are applying for ERAP, provided that the Settling Tenant pays timely rent covering August through October 2021 (with the first payment to be due following the Court's approval of the Settlement), such Settling Tenant's Arrearage Obligation shall be reduced first by the total amount of any ERAP payments received by the Debtors or the Successor Owners, as applicable, on behalf of the Settling Tenant, and then next by applying the Rent Forgiveness or the entire remaining balance of the Arrearage Obligation, whichever is less, and then finally by applying the 40% ERAP Credit. For all Settling Tenants with Arrearage Obligations, if the Settling Tenant fails to timely pay rent during such three (3) month period (which may be extended for certain unforeseen conditions) then the Settling Tenant does not get the benefit of the Rent Forgiveness.

d.  *Payment of Rent.*  For current tenants, the Settling Tenant is obligated to timely pay rent in accordance with his/her Lease from and after August 1, 2021, with any rent due for the period prior to the Settlement Effective Date to be paid within ten (10) days of the Settlement Effective Date.

e.  *Additional Provisions Regarding the Payment of Rent.*

    i.  For Settling Tenants who are the recipient of a rent subsidy through the Section 8 Housing Choice Voucher program, such Settling Tenant is not responsible for paying or causing to be paid any amounts in excess of this Section 8 tenant share, regardless of whether the Successor Owners have received all Section 8 Housing Assistance Payments due on behalf of the Settling Tenant. The Settling Tenant agrees to reasonably cooperate with the Debtors or the Successor Owners, as applicable, to enable the Debtors or the Successor Owners, as applicable, to recover all rent subsidies due from the Section 8 Housing Choice Voucher program on the Settling Tenant's behalf.

    ii.  For Settling Tenants who participate in the Senior Citizen Rent Increase Exemption Program or the Disability Rent Increase Exemption Program, such Settling Tenant's monthly rent obligation is frozen at a set amount by the New York City Department of Finance pursuant to the rules of that program and the Settling Tenant is not responsible for paying or causing to be paid any amounts in excess of this frozen rent, regardless of whether the Successor Owners have received all tax abatement credits due on behalf of the Settling Tenant.

    iii.  For Settling Tenants who receive a shelter allowance and Family Homelessness & Eviction Prevention Supplement, such Settling Tenant's

monthly rent obligation is set by the relevant public housing agency pursuant to the rules of that program and the Settling Tenant is not responsible for paying or causing to be paid any amounts in excess of the Settling Tenant's share, regardless of whether the Successor Owners have received all DSS/HRA Assistance Payments due on behalf of the Settling Tenant.

f. *Treatment of Arrearage Obligations.*    For current tenants with Arrearage Obligations that are greater than zero after application of the Rent Forgiveness and the Settlement Amount, such Settling Tenant may either: (1) pay the remaining Arrearage Obligation in full to the Debtors or the Successor Owners, as applicable, or (2) fully vacate and surrender the Apartment.  If the Settling Tenant fully vacates and surrenders the Apartment, the Settling Tenant's remaining Arrearage Obligation shall be forgiven and released, provided the Settling Tenant has paid rent currently from the Settlement Effective Date through vacation of the Apartment.  If the Settling Tenant chooses to stay in his or her apartment, the Settling Tenant will pay the Net Arrearage Obligation as of the Settlement Effective Date (giving effect to the 40% ERAP Credit and to the future ERAP payments that the Debtors or the Successor Owners, as applicable, reasonably expect to receive on the Settling Tenant's behalf) into escrow for the benefit of the Debtors or the Successor Owners to be maintained in a trust or IOLTA account managed by an independent third party, whose fees and costs LoanCore shall bear, within fourteen (14) days of the Settlement Effective Date.  To the extent that the funds held in escrow are not sufficient to satisfy the Settling Tenant's Net Arrearage Obligation, the Settling Tenant agrees to pay the difference to the Debtors or the Successor Owners, as applicable, within fourteen (14) days of the Debtors' or Successor Owners', as applicable, receipt of ERAP funds on behalf of such Settling Tenant.

g. *ERAP/Rent Relief.*  Settling Tenants, who are eligible for the program, shall apply for payments pursuant to the New York State Emergency Rental Assistance Program ("ERAP").  In the event the Successor Owner receives payments from ERAP, promptly following receipt of such payments, the Settling Tenant will receive an additional rent credit or cash payment, equal to 40% of the amount of the ERAP payments actually received by the Successor Owners for the Settling Tenant.

h. *Repair Conditions*. The Settlement Agreement sets forth the remaining unresolved repairs for the Settling Tenant's apartment, if any.  The Debtors or the Successor Owners, as applicable, shall perform repairs to correct the unresolved repairs within thirty (30) days of the Settlement Effective Date, subject to the Settling Tenant providing reasonable access to the Apartment.  Provided the Debtors or the Successor Owners, as applicable, comply with their obligations under the Settlement Agreement with respect to the unresolved repairs, the Settling Tenant waives any claims, counterclaims, and defenses for breach of the warranty of habitability for the conditions which necessitated such repairs.

     i.   *Releases*.  The Settlement Agreement contains mutual releases by the Parties and also contemplates a release to be delivered by any current or recent co-habitants residing at the Settling Tenant's apartment.

## RELIEF REQUESTED

12.    The Debtors request entry of the 9019 Order substantially in the form attached hereto as Exhibit A, approving the Settlement among the Parties, as embodied in the template Settlement Agreement attached hereto as Exhibit D and any individual settlement agreement to be entered into by the Parties, and authorizing the Debtors to enter into and implement such settlement agreements.

## BASIS FOR RELIEF

13.    The Debtors submit that the Settlement is in the Debtors' best interests and should be approved under Bankruptcy Rule 9019.  Bankruptcy Rule 9019(a) authorizes a court, after notice and a hearing, to approve a compromise or settlement of a controversy, providing, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Bankruptcy courts will generally approve a settlement pursuant to Bankruptcy Rule 9019 if the settlement is in the best interest of the debtor's estate. *See Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Further, settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson* ("*TMT Trailer*"), 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106,130 (1939)); *see also In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (holding the decision to accept or reject settlement lies within sound discretion of the bankruptcy court).

14.    A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve it. *See TMT Trailer*, 390 U.S. at 424-25; *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 365 (Bankr. S.D.N.Y. 2002); *In re MF Global Inc.*, Case No. 11–2790 2012 WL 3242533 at *5 (Bankr. S.D.N.Y. Aug. 10, 2012).

15.    In doing so, the Court need not decide the numerous issues of law and fact raised by a compromise or settlement "but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Adelphia Commc'n. Corp*., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). The Court need not "conduct a 'mini-trial'" but rather "only need be apprised of those facts that are necessary to enable it to evaluate the settlement and make a considered and independent judgment. *See In re Adelphia*, 327 B.R. at 159.

16.    The decision to approve or deny a particular settlement involving a bankruptcy estate lies within the discretion of the bankruptcy court. *See In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994). A court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (citing cases). And, in order to evaluate the necessary facts, a court may rely on the opinion of the debtor, settlement parties, and professionals. *See In re Purofied Down Prods. Corp*., 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); *see also In re MF Global Inc.*, Case No. 11–2790, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012)

(recognizing the business judgment of the debtor in recommending a settlement should be considered).

17.     Courts evaluate the following factors when considering whether to approve a settlement: (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (c) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (d) whether other parties in interest support the settlement; (e) the "competency and experience of counsel" supporting the settlement; (f) "the nature and breadth of releases to be obtained by officers and directors"; and (g) "the extent to which the settlement is the product of arm's length bargaining." *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) ("*Iridium*").

18.     The Settlement embodied in the Settlement Agreement satisfies each of the *Iridium* factors and the standards set forth in *TMT Trailer* for approval of a settlement. The Settlement Agreement is fair and equitable and in the best interest of the estate because, together, it resolves on a consensual basis a large number of claims and causes of action asserted in the Tenant Claims against the Debtors, along with the Arrearage Obligations owed by many of the Settling Tenants, on terms well above the "lowest point in the range of reasonableness."

*Factor (a) - The Settlement Properly Balances the Parties' Respective Litigation Positions*

19.     The first *Iridium* factor reflects the Supreme Court's view that a court should form an "intelligent and objective opinion" of the probability of success in the underlying litigation and inherent costs of such litigation. *See TMT Trailer*, 390 U.S. at 424. First, the Debtors will receive

10

substantial benefits under the Settlement respective to each Party's litigation position. Success in challenging the Tenant Claims and prosecuting the Arrearage Obligations is uncertain, especially in light of the fact-intensive nature of the claims asserted. Such cases can inherently be risky and difficult to predict. Given the cost and risk of litigation and the significant value embodied in the Settlement Agreement, as applied to each of the Settling Tenants, the Debtors believe the Settlement is appropriate and in the best interests of their estates.

> *Factor (b) - The Settlement Avoids the Costs and Risk Associated with Continued Defense of the Tenant Claims and Prosecution of the Arrearage Obligations*

20.     In evaluating the reasonableness of a settlement, a court should "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer*, 390 U.S. at 424. Avoiding costly, protracted litigation that would consume significant estate resources at this critical juncture is in the best interests of the Debtors' estates. The Debtors have been in chapter 11 for more than nine (9) months and litigation in connection with the Tenant Claims and Arrearage Obligations remain an albatross for the Debtors and their potential exit from bankruptcy.

21.     Clearly, any litigation over the Tenant Claims and Arrearage Obligations would be highly contentious, drawn-out, and relatively costly, especially with the involvement of highly sophisticated and able counsel. The Debtors are also constrained from pursuing eviction actions based on the existing eviction moratorium in New York. As a result, this *Iridium* factor weighs in favor of the Court approving the Settlement embodied in the Settlement Agreement.

> *Factors (c) and (d) - The Settlement Agreement Has Widespread Support*

22.     The major constituencies in the Debtors' Chapter 11 Cases support the Settlement Agreement. The Debtors, LoanCore, the Successor Owners, the Tenants' Association, and each

11

of the Settling Tenants are supportive of the Settlement Agreement. The Settlement Agreement was developed over months of intense negotiations among the Parties. The result of these negotiations is a comprehensive settlement of dozens of Tenant Claims that is fair, equitable, and in the best interests of the estates. *See* Diamond Decl. ¶ 6.

*Factor (e) - The Settlement Agreement Is Supported by Highly Skilled Counsel*

23.     Each of the Parties have been represented by skilled and experienced bankruptcy and landlord-tenant practitioners during the negotiations to get to the Settlement Agreement, which further supports approval of the Settlement. Courts have given this factor considerable weight. *See In re Adelphia*, 327 B.R. at 164; *see also In re Chemtura Corp*., 439 B.R. at 608 ("No argument has been made, nor could any argument be made that counsel who put the Settlement together were anything less than highly skilled in their craft . . . ."). If the Settlement Agreement is not approved, these same skilled attorneys will zealously represent their clients to pursue any and all claims and causes of action. As a result, this *Iridium* factor weighs in favor of approving the Settlement embodied in the Settlement Agreement, including the Co-Habitant Release.

*Factor (f) - The Nature and Breadth of Releases Are Proper*

24.     The releases embodied in the Settlement Agreement and Co-Habitant Release are appropriate and an integral part of the comprehensive resolution of the Tenant Claims and Arrearage Obligations achieved in the Settlement Agreement. *See* Diamond Decl. ¶ 8. Further, such releases add finality and are being given in exchange for substantial value. Accordingly, this *Iridium* factor supports Court approval of the Settlement.

*Factor (g) - The Settlement is the Result of Extensive Negotiations and is the Best Possible Consensual Resolution Among the Parties of the Tenant Claims and Arrearage Obligations*

25.     Finally, each of the Parties were represented by competent and experienced counsel who negotiated at arm's length over the course of many months. Through multiple rounds of

12

compromise and discussion, the Parties worked in good faith towards a consensual resolution of all disputed issues.

26.     The Settlement reflects the best possible consensual resolution among the Parties of the Tenant Claims, the Rent Strike and the Arrearage Obligations.  The Parties and their professionals worked tirelessly to develop the best possible terms for the Debtors.  The alternative to a consensual resolution is a potentially worse outcome for the Debtors than a settlement on the terms embodied in the Settlement Agreement, including the Co-Habitant Release.  The Debtors believe that the Settlement is an important step in achieving confirmation of the Plan, although they recognize that there remain a large number of unresolved Tenant Claims which will need to be the subject of a separate settlement and/or continued litigation.  *See* Diamond Decl. ¶ 9. Accordingly, this *Iridium* factor supports Court approval of the Settlement.

## RESERVATION OF RIGHTS

27.     Nothing in the Motion or the Settlement Agreement is intended to be, nor shall it be deemed or construed as, an admission or finding with respect to any of the Settling Tenants' Tenant Claims or issues relevant to any other claims filed by creditors against the Debtors' estates. For the avoidance of doubt, with respect to claims filed against the Debtors' estates that are not the subject of this Motion, the Parties' and any other creditors rights are expressly reserved with respect to such claims.

## NOTICE

28.     The Debtors will provide notice of this Motion to: i) the Office of the United States Trustee; ii) the Tenants' Association; iii) the Ad Hoc Group of West 107th Street Tenants; iv) the City of New York; v) the New York State Office of the Attorney General; vi) New York State Housing and Community Renewal; vii) LoanCore Capital Credit REIT LLC; and viii) any party

13

that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the

circumstances, no other or further notice is required.

## **CONCLUSION**

29.     For the foregoing reasons, the Debtors respectfully request that this Court enter the

9019 Order attached as Exhibit A to the Motion authorizing the Debtors to execute the Settlement

Agreement with each of the Settling Tenants, and to grant such other further relief as is just and

proper.


Dated: November17, 2021
        New York, New York                 /s/ *Mark Frankel*_____
                                            Mark Frankel
                                            Backenroth Frankel & Krinsky LLP
                                            800 Third Avenue, 11th Floor
                                            New York, NY 10022
                                            (212) 593-1100
                                            Email:  mfrankel@bfklaw.com

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 203 W 107 STREET LLC, *et al.*,[1] | ) | Case No. 20-12960 (LGB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

_____

## ORDER APPROVING THE SETTLEMENT OF CERTAIN TENANT CLAIMS

Upon the motion (the "Motion") [ECF No.__] of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") for entry of an order pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement (the "Settlement") of certain tenant claims (the "Tenant Claims") identified in Exhibit B to the Motion filed against the Debtors' estates pursuant to that certain settlement agreement attached as Exhibit D to the Motion (the "Settlement Agreement")[2] by and among the Debtors, LoanCore Capital Credit REIT LLC ("LoanCore") on behalf of itself and the Successor Owners, and each of those tenants identified in Exhibit B to the Motion (each, a "Settling Tenant" and collectively, the "Settling Tenants");[3] and upon the Diamond Declaration submitted in support of the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  203 W 107 Street LLC (8429); 210 W 107 Street LLC (3364), 220 W 107 Street LLC (0461), 230 W 107 Street LLC (3686), 124-136 East 117 LLC (6631), 215 East 117 LLC (6961), 231 East 117 LLC (0105), 235 East 117 LLC (8762), 244 East 117 LLC (1142), East 117 Realty LLC (1721) and 1661 PA Realty LLC (5280).
[2] Capitalized terms used but not otherwise defined in this 9019 Order shall have the meanings ascribed to such terms in the Motion.
[3] In addition to the Settling Tenants' names, Exhibit B indicates the claim number for each Tenant Claim, the Debtor against whom the Tenant Claim was filed, and the settlement number amounts to be inserted into the Settlement Agreement for each of the Settling Tenants.

Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on November __, 2021 (the "Hearing"); and the record of the Hearing; and after due deliberation, the Court having determined that the legal and factual basis set forth in the Motion and at the Hearing establish good and sufficient cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, creditors and all parties in interest; now, therefore, it is hereby:

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that the Settlement Agreement attached to the Motion as Exhibit D is approved in its entirety; and it is further

**ORDERED** that the Court finds and determines that the proposed compromise and resolution embodied in the Settlement Agreement is reasonable and appropriate and a valid exercise of the Debtors' business judgment and that standard in *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007) has been satisfied; and it is further

**ORDERED** that the Debtors are authorized and directed to execute the individual Settlement Agreements with each of the Settling Tenants and the other Parties and are authorized to perform pursuant to its terms, and to take any and all actions necessary and appropriate to consummate such Settlement Agreements, and execute and deliver any documents, agreements or

instruments as may be necessary or appropriate to implement such Settlement Agreements; and it is further

**ORDERED** that the Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order; and it is further

**ORDERED** that, notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order and the Settlement Agreement approved herein.

Dated: _____ __, 2021
      New York, NY                                           _____
                                                The Honorable Lisa G. Beckerman

## **EXHIBIT B**

**The Settling Tenants and Settlement Agreement Amounts**

**Current and Former Tenants with Arrears**

| Property | Unit | Tenant | Total Arrears[1] | Claim Amount | Settlement (10%) | Arrears Post-Rent Forgiveness | Arrears Post-Settlement | Tenant Credit or Payment | Security Deposit | Claim No. | Debtor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 124 East 117th Street | 2B | Alonzo Johnson | 30,125 | 20,000 | 2,000 | 5,125 | 3,125 | - | 1,639 | 28-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 2E | Anna Arce | 8,212 | 20,000 | 2,000 | - | - | 2,000 | 1,645 | 6-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 2F | Shannon Kelly | 6,989 | 20,000 | 2,000 | - | - | 2,000 | 1,000 | 36-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 2J | Jessie Brown | 6,494 | 20,000 | 2,000 | - | - | 2,000 | 1,963 | 10-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 2L | Danyluz Nelson | 18,623 | 20,000 | 2,000 | - | - | 2,000 | 1,662 | 12-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 2N | Emily Shoup[2] | 742 | 20,000 | 2,000 | - | - | 2,000 | 1,469 | 15-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 3B | Wilfredo Lopez | 31,414 | 20,000 | 2,000 | 6,414 | 4,414 | - | 2,425 | 35-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 3C | Yevgeniya Ivanyutenko | 28,698 | 60,000 | 6,000 | 3,698 | - | 2,302 | 2,399 | 17-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 3E | Juan Sandoval | 27,577 | 20,000 | 2,000 | 2,577 | 577 | - | 2,399 | 29-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 4C | Julia Hajjar | 175 | 20,000 | 2,000 | - | - | 2,000 | 1,287 | 30-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 4E | Alexander Laird | 14,398 | 20,000 | 2,000 | - | - | 2,000 | 1,102 | 14-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 4H | Samantha Davis | 32,879 | 20,000 | 2,000 | 7,879 | 5,879 | - | 2,400 | 26-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 4N | Michelle Smith | 11,986 | 20,000 | 2,000 | - | - | 2,000 | 2,050 | 25-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 5B | Denise Rivera | 30,679 | 25,000 | 2,500 | 5,679 | 3,179 | - | 1,645 | 16-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 5C | Mark Davy | 37,465 | 20,000 | 2,000 | 12,465 | 10,465 | - | 2,100 | 20-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 5F | Rhonda Reid | 8,900 | 20,000 | 2,000 | - | - | 2,000 | 2,316 | 8-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 5G | Lonnie Dennard | 12,900 | 20,000 | 2,000 | - | - | 2,000 | 2,100 | 31-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 5H | Rosalida Vargas | 10,587 | 20,000 | 2,000 | - | - | 2,000 | 1,134 | 24-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 6E | Michael Comee | 57,335 | 20,000 | 2,000 | 32,335 | 30,335 | - | 2,600 | 32-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 6F | Carolyn Lindsay | 10,910 | 20,000 | 2,000 | - | - | 2,000 | 1,938 | 32-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 6H | Barbara Lopes | 14,937 | 20,000 | 2,000 | - | - | 2,000 | 1,655 | 11-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 6J | Luisa Johnson | 6,252 | 20,000 | 2,000 | - | - | 2,000 | 1,873 | 34-1 | 124-136 East 117 LLC |
| 231 East 117th Street | 1A | Rachel Mosley | 40,975 | 20,000 | 2,000 | 15,975 | 13,975 | - | 2,150 | 6-1 | 231 East 117 LLC |
| 231 East 117th Street | 2E | Florencia Aguilar | 11,481 | 20,000 | 2,000 | - | - | 2,000 | 1,260 | 11-1 | 231 East 117 LLC |
| 231 East 117th Street | 3B | Eduardo Ortiz-Franco | 6,613 | 20,000 | 2,000 | - | - | 2,000 | 1,502 | 14-1 | 231 East 117 LLC |
| 231 East 117th Street | 3E | Victor Vega | 5,781 | 23,279 | 2,328 | - | - | 2,328 | 1,257 | 26-1 | 203 W 107 Street LLC |
| 231 East 117th Street | 4D | Augustina & Ramiro Reyes | 6,029 | 20,000 | 2,000 | - | - | 2,000 | 1,444 | 10-1 | 231 East 117 LLC |
| 231 East 117th Street | 3B | Erin Perry | 6,628 | 20,000 | 2,000 | - | - | 2,000 | 2,200 | 7-1 | 231 East 117 LLC |
| 231 East 117th Street | 5F | James Orona | 75,100 | 20,000 | 2,000 | 50,100 | 48,100 | - | 1,550 | 16-1 | 231 East 117 LLC |
| 231 East 117th Street | 6C | Olga Pina | 6,873 | 20,000 | 2,000 | - | - | 2,000 | 870 | 15-1 | 231 East 117 LLC |
| 231 East 117th Street | 2F | Shawn Schand | 12,150 | 20,000 | 2,000 | - | - | 2,000 | 2,280 | 9-1 | 231 East 117 LLC |
| 235 East 117th Street | 1B | Stephanie Mohorn | 49,045 | 20,000 | 2,000 | 24,045 | 22,045 | - | 2,100 | 5-1 | 235 East 117 LLC |
| 235 East 117th Street | 2F | Jeffrey Musillo | 24,210 | 20,000 | 2,000 | - | - | 2,000 | 2,675 | 4-1 | 235 East 117 LLC |
| 235 East 117th Street | 3F | Naomi Hayes | 10,625 | 20,000 | 2,000 | - | - | 2,000 | 1,449 | 9-1 | 235 East 117 LLC |
| 235 East 117th Street | 4C | Fernando Martin Diez | 22,552 | 20,000 | 2,000 | - | - | 2,000 | 1,399 | 7-1 | 235 East 117 LLC |
| 235 East 117th Street | 4D | Alba Dominguez | 38,620 | 20,000 | 2,000 | 13,620 | 11,620 | - | 5,550 | 10-1 | 235 East 117 LLC |
| 235 East 117th Street | 6C | Aristeo Basurto-Gonzalez and Yolanda Prude | 8,801 | 11,250 | 1,125 | - | - | 1,125 | 1,291 | 25-1 | 203 W 107 Street LLC |
| 235 East 117th Street | 1A | Gianna Miller[2] | 26,653 | 20,000 | 2,000 | 1,653 | - | 347 | 1,608 | 8-1 | 235 East 117 LLC |

1. Arrears as of July 31, 2021.
2. Total Arrears subject to ongoing review by the Parties.

**Former Tenants - No Arrears**

| Property | Unit | Tenant | Total Arrears | Claim Amount | Settlement (10%) | Arrears Post-Rent Forgiveness | Arrears Post-Settlement | Tenant Credit or Payment | Security Deposit | Claim No. | Debtor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 124 East 117th Street | 1C | David Randall | - | 20,000 | 3,000 | - | - | 3,000 | 2,150 | 13-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 1H | Jaqwan Wright | - | 20,000 | 3,000 | - | - | 3,000 | 2,395 | 7-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 3G | Wallace Silveira | - | 20,000 | 3,000 | - | - | 3,000 | 1,242 | 22-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 3J | Abraham Ozdemir | - | 20,000 | 3,000 | - | - | 3,000 | 2,399 | 18-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 4K | Mollie Rohrbaugh and Nick Rohrbaugh | - | 20,000 | 3,000 | - | - | 3,000 | 2,600 | 21-1 | 124-136 East 117 LLC |
| 124 East 117th Street | 4L | Neo Cihi | - | 20,000 | 3,000 | - | - | 3,000 | 1,090 | 27-1 | 124-136 East 117 LLC |
| 231 East 117th Street | 2D | Adam Baldwin | - | 20,000 | 3,000 | - | - | 3,000 | 2,340 | 13-1 | 231 East 117 LLC |
| 235 East 117th Street | 2E | Richard Devitt | - | 20,000 | 3,000 | - | - | 3,000 | 2,000 | 6-1 | 235 East 117 LLC |

**Current Tenant - No Arrears**

| Property | Unit | Tenant | Total Arrears | Claim Amount | Settlement (10%) | Arrears Post-Rent Forgiveness | Arrears Post-Settlement | Tenant Credit or Payment | Security Deposit | Claim No. | Debtor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 231 East 117th Street | 1B | Marie Miranda | - | 20,000 | 3,000 | - | - | 3,000 | 589 | 5-1 | 231 East 117 LLC |
| 231 East 117th Street | 1D | Pablo Obando | - | 20,000 | 3,000 | - | - | 3,000 | 2,760 | 8-1 | 231 East 117 LLC |
| 231 East 117th Street | 4C | Maria Blancas | - | 20,000 | 3,000 | - | - | 3,000 | 1,634 | 12-1 | 231 East 117 LLC |

## EXHIBIT C

**Diamond Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| 203 W 107 STREET LLC, *et al.*,[1] | ) Case No. 20-12960 (LGB) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DECLARATION OF EPHRAIM DIAMOND, THE DEBTORS' CHIEF RESTRUCTURING OFFICER, IN SUPPORT OF THE DEBTORS' MOTION FOR AN ORDER APPROVING THE SETTLEMENT OF CERTAIN TENANT CLAIMS

Ephraim Diamond hereby affirms and says under penalty of perjury:

1.     I am an attorney duly admitted to practice law in the courts of the State of New York and the Southern District of the State of New York.

2.     I am the Chief Restructuring Officer for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), and as such I am fully familiar with the facts and circumstances contained herein.

3.     I am submitting this declaration in support of the Debtors' motion for entry of an order approving the settlement of certain tenant claims filed by Tenants' Counsel and granting related relief (the "Motion").[2]

4.     The Debtors will receive substantial benefits under the Settlement respective to each Party's litigation position.  Success in challenging the Tenant Claims and prosecuting the Arrearage Obligations is uncertain, especially in light of the fact-intensive nature of the claims

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  203 W 107 Street LLC (8429); 210 W 107 Street LLC (3364); 220 W 107 Street LLC (0461), 230 W 107 Street LLC (3686), 124-136 East 117 LLC (6631), 215 East 117 LLC (6961), 231 East 117 LLC (0105), 235 East 117 LLC (8762), 244 East 117 LLC (1142), East 117 Realty LLC (1721) and 1661 PA Realty LLC (5280).

[2] Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to such terms in the Motion.

asserted. In my experience, such cases can inherently be risky and difficult to predict. Given the cost and risk of litigation and the significant value embodied in the Settlement Agreement, as applied to each of the Settling Tenants, I believe the Settlement is appropriate and in the best interests of the Debtors' estates.

5.    Any litigation over the Tenant Claims and Arrearage Obligations would be highly contentious, drawn-out, and relatively costly, especially with the involvement of highly sophisticated and able counsel. The Debtors are also constrained from pursuing eviction actions based on the existing eviction moratorium in New York. Thus, the alternative would be years of expensive and protracted litigation.

6.    In addition to the Debtors, I understand and believe LoanCore, the Successor Owners, the Tenants' Association, and each of the Settling Tenants in the Debtors' Chapter 11 Cases support the Settlement embodied in the Settlement Agreement. The Settlement Agreement was developed over months of intense negotiations among the Parties. The result of these negotiations is a comprehensive settlement of dozens of Tenant Claims that is fair, equitable, and in the best interests of the estates.

7.    It is my belief that if the Settlement Agreement is not approved, the skilled attorneys representing the Debtors, LoanCore, the Successor Owners, and each of the Settling Tenants will zealously represent their clients to pursue any and all claims and causes of action, leading to, among other things, further administrative costs to be borne by the Debtors' estates and increased uncertainty concerning the outcome of these Chapter 11 Cases.

8.    The releases contained in the Settlement Agreement and the Co-Habitant Release are an integral part of the comprehensive resolution of the Tenant Claims and Arrearage

2

Obligations achieved in the Settlement Agreement, and without such releases, none of the Parties would have entered into the Settlement.

9.      The Settlement reflects the best possible consensual resolution among the Parties of the Tenant Claims, the Rent Strike, and the Arrearage Obligations.  The Parties and their professionals worked tirelessly to develop the best possible terms for the Debtors.  The alternative to a consensual resolution is a potentially worse outcome for the Debtors than a settlement on the terms embodied in the Settlement Agreement, including the Co-Habitant Release.  The Debtors believe that the Settlement is an important step in achieving confirmation of the Plan, although they recognize that there remain a large number of Tenant Claims which will need to be the subject of a separate settlement and/or continued litigation.

I declare under penalty of perjury that the foregoing statements made by me are true and correct.

Dated: November 17, 2021
       New York, NY


                                    By: /s/ *Ephraim Diamond*            
                                    Ephraim Diamond

# **EXHIBIT D**

**Settlement Agreement**

**Settling Tenant's Name:**
**Settling Tenant's Address:**

## SETTLEMENT AGREEMENT

This settlement agreement, made as of [_____], 2021 (the "Agreement"),[1] is entered into by and among 203 W 107 Street LLC, 210 W 107 Street LLC, 220 W 107 Street LLC, 230 W 107 Street LLC, 124-136 East 117 LLC , 215 East 117 LLC, 231 East 117 LLC, 235 East 117 LLC, 244 East 117 LLC, East 117 Realty LLC, and 1661 PA Realty LLC (collectively, the "Debtors"), LoanCore Capital Credit REIT LLC ("LoanCore") on behalf of itself and 203 W 107 Street Owner LLC, 210 W 107 Street Owner LLC, 220 W 107 Street Owner LLC, 230 W 107 Street Owner LLC, 124-136 East 117 Owner LLC, 215 East 117 Owner LLC, 231 East 117 Owner LLC, 235 East 117 Owner LLC, 244 East 117 Owner LLC, East 117 Realty Owner LLC, and 1661 PA Realty Owner LLC (collectively, the "Successor Owners"), and [_____] (the "Settling Tenant," and together with the Debtors, LoanCore, and the Successor Owners, the "Parties").

## RECITALS

WHEREAS, on December 28, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of New York (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on December 30, 2020, the Court entered the *Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [ECF No. 12], which established February 16, 2021 as the bar date for non-governmental units to file proofs of claim against the Debtors' estates; and

WHEREAS, on February 12, 2021, the Court entered the *Amended Order Extending Deadline for Tenants to File Proofs of Claim* [ECF No. 47], which extended the bar date solely for current and former tenants at the Properties to file proofs of claim against the Debtors' estates to March 2, 2021 at 5:00 p.m. (prevailing Eastern Time); and

WHEREAS, [*Current Tenants*] the Settling Tenant resides at _____ (the "Apartment"); and

WHEREAS, the following individuals reside or have resided at the Apartment during the last 24 months: [_____] (the "Co-Habitants"); and

WHEREAS, the Settling Tenant timely filed Claim No. [____] (the "Tenant Claim") in an amount not less than $[_____] against Debtor [_____]; and

---

[1] Unless otherwise noted, any capitalized terms used but not otherwise defined in this Agreement shall have the meanings ascribed to such terms in the *Fourth Amended Joint Plan of Liquidation of the Debtors* [ECF No. 67] (the "Plan"), without regard to any subsequent modifications thereto.

WHEREAS, the Settling Tenant asserts in the Tenant Claim that the Debtors are liable for, among other things, breach of lease, breach of the warranty of habitability, harassment, rent overcharge, return of the Settling Tenant's Security Deposit (as defined herein), and attorneys' fees; and

WHEREAS, the Debtors have asserted defenses to the Tenant Claim and deny liability with respect to all of the claims alleged in the Tenant Claim by the Settling Tenant; and

WHEREAS, [*If Arrearage Exists*] the Debtors have asserted that the Settling Tenant owes outstanding rent in the amount of $[_____] (the "Arrearage Obligation") as of [_____], 2021, with respect to which the Settling Tenant asserts certain defenses, including but not limited to affirmative defenses based upon the claims set forth in the Tenant Claim; and

WHEREAS, the Parties wish to settle the Arrearage Obligation, Tenant Claim and certain other matters on the terms set forth herein.

NOW THEREFORE, in consideration of the foregoing recitals, which are incorporated into this Agreement, and the covenants and conditions contained herein, the Parties hereby agree as follows:

1.    <u>Settlement Effective Date</u>.  The effective date of this Agreement shall be the date the Court enters an Order approving this Agreement (the "Settlement Effective Date").

2.    <u>Settling Tenant's Security Deposit</u>.

[*Current Tenant:*]  The Successor Owners shall establish a segregated account to maintain the security deposit for the Settling Tenant in the amount of $[_____] (the "Security Deposit") promptly, but in no event greater than thirty (30) days following the Effective Date of the Plan (the "Plan Effective Date"), subject to such tenant providing the Successor Owners with know-your-client information and any other documentation which may reasonably be required by the bank where the segregated accounts shall be established; *provided*, that notwithstanding anything to the contrary herein, the amount of the Security Deposit so deposited by the Successor Owners shall in no event be less than the monthly rent due under the Settling Tenant's original lease, regardless of whether the Settling Tenant executed such original lease with the Debtors or a prior third-party landlord.

[*Former Tenant with Unreturned Security Deposit:*]  The Successor Owners shall pay the Settling Tenant the amount of their security deposit in the amount of $[_____] (the "Security Deposit") promptly, but in no event greater than thirty (30) days of the Plan Effective Date; *provided*, that notwithstanding anything to the contrary herein, the amount of the Security Deposit so paid by the Successor Owners shall in no event be less than the monthly rent due under the Settling Tenant's original lease, regardless of whether the Settling Tenant executed such original lease with the Debtors or a prior third-party landlord.[2]

---

[2] For the avoidance of doubt, if the Settling Tenant is a former tenant and [his/her] security deposit was returned prior to the Plan Effective Date, the Successor Owners shall not be responsible to the Settling Tenant for return of one month's rent under the Settling Tenant's original lease.

3.      Settlement of the Tenant Claim.  As of the Settlement Effective Date, the Settling Tenant will have an Allowed Tenant Cure Claim in the amount of $[_____] (the "Settlement Amount") and the remainder of the Tenant Claim shall be disallowed.  [If the Settling Tenant's Net Arrearage Obligation (as defined below) is zero or will be reduced to zero after the application of Rent Forgiveness (as described in [paragraph 4]), then the Settlement Amount shall be paid or credited to the Settling Tenant (as provided in [paragraph 8]).] [If the Settling Tenant's Net Arrearage Obligation (as defined below) is not zero or will not be reduced to zero after the application of Rent Forgiveness (as described in [paragraph 4]), then the Settling Tenant's Arrearage Obligation shall be further reduced by the Settlement Amount, with any excess paid or credited to the Settling Tenant (as provided in [paragraph 8]).  For avoidance of doubt, the Net Arrearage Obligation (as defined below) reflects the reduction on account of the Settlement Amount.]  For the avoidance of doubt, the amount of the Allowed Tenant Cure Claim shall not be reduced by the amount of the Security Deposit.  Further, interest, late fees, and legal fees shall be waived and shall not be applied against the Allowed Tenant Cure Claim, the Net Arrearage Obligation, or any payments pursuant to ERAP (as defined herein), except as otherwise provided below in [paragraph 4].

4.      Rent Forgiveness. [*If the Settling Tenant Has An Arrearage Obligation and Does Not Qualify for ERAP:*]  In the event that the Settling Tenant pays rent timely pursuant to terms of such Settling Tenant's Lease (as defined below) for three (3) consecutive months beginning as of August 1, 2021, then the Settling Tenant's Arrearage Obligation shall be reduced (the "Rent Forgiveness") to a net arrearage obligation of $[_____] (the "Net Arrearage Obligation").

[*If the Settling Tenant Has An Arrearage Obligation and is Applying for ERAP:*] In the event that the Settling Tenant pays rent timely pursuant to the terms of such Settling Tenant's Lease (as defined below) for three (3) consecutive months beginning as of August 1, 2021, then the Settling Tenant's Arrearage Obligation shall be reduced first by the total amount of any ERAP payments received by the Debtors or the Successor Owners, as applicable, on behalf of the Settling Tenant, and then next by applying a rent forgiveness credit (the "Rent Forgiveness") of up to $25,000 or the entire remaining balance of the Arrearage Obligation, whichever is less, and then finally by applying the 40% ERAP Credit (as defined below) provided for below in [paragraph 9]. If the Settling Tenant's Arrearage Obligation is not reduced to zero after application of the ERAP payment, the Rent Forgiveness, and the 40% ERAP Credit, in that order, the Settling Tenant shall remain responsible for the remaining balance left on the Arrearage Obligation (the "Net Arrearage Obligation").

[*For All Tenants With an Arrearage Obligation*], *provided*, *however*, that if the Settling Tenant is unable to timely pay rent during such three (3) month period due solely to an "Unexpected Change of Circumstance" certified by the Settling Tenant with reasonable documentary evidence provided to the Successor Owners, then the Settling Tenant will be afforded an additional ninety (90) days from the date of default to become current for all outstanding rent through the end of such ninety (90) day period (the "Extension Period").  For purposes of this paragraph, rent payments shall be considered timely if they are paid (i) within ten (10) days of the Settlement Effective Date in respect of any rent due before such date, and (ii) for any month following the Settlement Effective Date, on or before the 10th day of the month.  An "Unexpected Change of Circumstance" shall mean an emergency event or circumstance that (a) is outside the

Settling Tenant's control, (b) could not reasonably be anticipated by the Settling Tenant at the time of the settlement, and (c) prevents the Settling Tenant from making timely rent payments, including, but not limited to, (x) an unexpected job loss by the Settling Tenant or Co-Habitant, (y) a significant, unexpected health event requiring hospitalization of the Settling Tenant, a Co-Habitant, or a family member living with the Settling Tenant or Co-Habitant, or (z) a failure or delay on the part of the New York City Human Resources Administration to timely deliver to the Successor Owners payment of the Settling Tenant's shelter allowance for an active public assistance case, except to the extent such failure or delay is a result of the Settling Tenant's action or inaction.  If (a) the Settling Tenant who is not eligible for the Extension Period does not pay rent on a timely basis for three (3) consecutive months as provided for in this paragraph, or (b) the Settling Tenant who is eligible for the Extension Period does not become current on all outstanding rent by the conclusion of the Extension Period, then the Rent Forgiveness will be of no force and effect and the Arrearage Obligation and any other unpaid amounts shall become immediately due and payable as rent entitling Successor Owners to all rights and remedies available at law or in equity, including but not limited to the Successor Owners' recovery of legal fees, interest, and late fees. Nothing contained in this [paragraph 4] shall invalidate any other provisions of this Agreement, including, without limitation, those contained in [paragraph 13].

5.    Arrearage Obligation Stipulation.  [*For Tenants with a $25,000 Arrearage Obligation or Greater:*] The Settling Tenant stipulates, admits, and agrees that as of the date of this Agreement, the Settling Tenant is justly and lawfully indebted and liable under the Lease, without defense, counterclaim, reduction or offset of any kind, in the aggregate amount of not less than the Arrearage Obligation (the "Arrearage Stipulation").

6.    Payment of Rent.  [*For Current Tenants:*]  The Settling Tenant acknowledges and agrees that [he/she] is obligated to timely pay rent in accordance with the Lease (as defined below) from and after August 1, 2021; *provided* that any rent due prior to the Settlement Effective Date shall be paid within ten (10) days of the Settlement Effective Date.  For the avoidance of doubt, any outstanding rent obligation of the Settling Tenant for the three (3) consecutive month period beginning on August 1, 2021 shall be reduced first by the application of any applicable rent credit described in [paragraph 8] hereof, and the remaining balance, if any, shall be paid in accordance with this paragraph.  From and after the Settlement Effective Date, subject to the terms hereof, the Settling Tenant hereby acknowledges [his/her] obligation to timely pay rent due under the Lease from and after August 1, 2021 pursuant to the terms of the Lease.  Provided the Debtors or the Successor Owners, as applicable, comply with their obligations under [paragraph 11] with respect to the Open Repairs (as defined below) in the individual apartment of the Settling Tenant, the Settling Tenant agrees to waive any claims, counterclaims, and defenses for breach of the warranty of habitability for the Open Repairs through the date the foregoing repairs are completed.

7.    Additional Provisions Regarding the Payment of Rent.

[*For Section 8 Tenants:*]  The Settling Tenant is the recipient of a rent subsidy through the Section 8 Housing Choice Voucher program, and [her/his] monthly rent obligation is therefore set by the relevant public housing agency pursuant to the rules of that program.  For the purposes of [paragraphs 4 and 6] of the Agreement, the term "rent" shall be defined as the Settling Tenant's current monthly Section 8 tenant share.  The Settling Tenant is not responsible for paying or

4

causing to be paid any amounts in excess of this Section 8 tenant share, regardless of whether the Successor Owners have received all Section 8 Housing Assistance Payments due on behalf of the Settling Tenant.  Nothing in the Agreement shall be construed to prevent the Debtors or the Successor Owners, as applicable, from collecting Section 8 Housing Assistance Payments directly from the public housing agency which administers the Settling Tenant's Section 8 subsidy.  The Settling Tenant agrees to reasonably cooperate with the Debtors or the Successor Owners, as applicable, to enable the Debtors or the Successor Owners, as applicable, to recover all rent subsidies due from the Section 8 Housing Choice Voucher program on the Settling Tenant's behalf.

[*For SCRIE/DRIE Tenants:*]  The Settling Tenant is a participant in the Senior Citizen Rent Increase Exemption Program or the Disability Rent Increase Exemption Program, and [her/his] monthly rent obligation is therefore frozen at a set amount by the New York City Department of Finance pursuant to the rules of that program.  For the purposes of [paragraphs 4 and 6] of the Agreement, the term "rent" shall be defined as the Settling Tenant's current frozen rent under SCRIE/DRIE.  The Settling Tenant is not responsible for paying or causing to be paid any amounts in excess of this SCRIE/DRIE frozen rent, regardless of whether the Successor Owners have received all tax abatement credits due on behalf of the Settling Tenant.  Nothing in the Agreement shall be construed to prevent the Debtors or the Successor Owners, as applicable, from collecting such tax abatement credits directly from the New York City Department of Finance.

[*For HRA/DSS Tenants:*] The Settling Tenant is the recipient of a shelter allowance and Family Homelessness & Eviction Prevention Supplement ("FHEPS") administered by the Human Resource Administration ("HRA") and NYC Department of Social Services ("DSS"), and [her/his] monthly rent obligation is therefore set by the relevant public housing agency pursuant to the rules of that program. For the purposes of [paragraphs 4 and 6] of the Agreement, the term "rent" shall be defined as the Settling Tenant's current monthly tenant share. The Settling Tenant is not responsible for paying or causing to be paid any amounts in excess of the Settling Tenant's share, regardless of whether the Successor Owners have received all DSS/HRA Assistance Payments due on behalf of the Settling Tenant. Nothing in the Agreement shall be construed to prevent the Debtors or the Successor Owners, as applicable, from collecting the DSS/HRA Assistance Payments directly from the public housing agency which administers the Settling Tenant's allowance or supplement.

[*For All Other Tenants:*] [Reserved.]

8.    Payment of the Net Settlement Amount.

[*For Settling Tenants that are Former Tenants Whose Net Arrearage Obligations Are Zero or Will Be Reduced to Zero Without Full Application of the Settlement Amount:*]   The Debtors or the Successor Owners, as applicable, shall pay the Settling Tenant the amount of $[_____] within fourteen (14) days of the Settlement Effective Date.

[*For Settling Tenants that are Current Tenants Whose Net Arrearage Obligations Are Zero or Will Be Reduced to Zero Without Full Application of the Rent Forgiveness and the Settlement Amount:*]    The Debtors or the Successor Owners, as applicable, shall apply a rent credit to the Settling Tenant's ledger in the amount of $[_____] within ten (10) days of the Settlement Effective Date.

9.    Treatment of the Net Arrearage Obligation.

[*For Settling Tenants with Net Arrearage Obligations that are Greater than Zero after Application of the Rent Forgiveness and the Settlement Amount Who are Paying and Staying in the Apartment and Who Do Not Qualify for ERAP:*] The Settling Tenant agrees to pay the Net Arrearage Obligation in full to the Debtors or the Successor Owners, as applicable, within fourteen (14) days of the Settlement Effective Date.

[*For Settling Tenants with Net Arrearage Obligations that are Greater than Zero after Application of the Rent Forgiveness and the Settlement Amount Who are Paying and Staying in the Apartment and Who are Applying for ERAP:*] In the event that the Settling Tenant's ERAP application remains pending on the Settlement Effective Date, the Settling Tenant agrees to pay the Net Arrearage Obligation as of the Settlement Effective Date (giving effect to the 40% ERAP Credit and to the future ERAP payments that the Debtors or the Successor Owners, as applicable, reasonably expect to receive on the Settling Tenant's behalf) into escrow for the benefit of the Debtors or the Successor Owners to be maintained in a trust or IOLTA account (the "Trust Account") managed by an independent third party, whose fees and costs LoanCore shall bear, within fourteen (14) days of the Settlement Effective Date.  Thereafter, (i) within seven (7) days of receiving notice from the Debtors or the Successor Owners, as applicable, that ERAP funds have been received on behalf of the Settling Tenant, the independent third-party managing the Trust Account shall be authorized and directed to disburse an amount from the Trust Account equal to the remaining Net Arrearage Obligation (after application of the ERAP funds received) to the Debtors or the Successor Owners, as applicable, with such amount to be applied to the Net Arrearage Obligation, and any remaining amount in the Trust Account to the Settling Tenant, or (ii) within seven (7) days of receiving a final denial of the Settling Tenant's ERAP application from the New York State Office of Temporary and Disability Assistance, the independent third-party managing the Trust Account shall be authorized and directed to disburse the full amount in the Trust Account to the Debtors or the Successor Owners, as applicable.  In the event that the Settling Tenant's ERAP application has been approved and ERAP funds received by the Debtors or Successor Owners, as applicable, prior to the Settlement Effective Date, the Settling Tenant agrees to pay the Net Arrearage Obligation in full to the Debtors or Successor Owners, as applicable, within fourteen (14) days of the Settlement Effective Date.  To the extent that the funds held in the Trust Account are not sufficient to satisfy the Settling Tenant's Net Arrearage Obligation, the Settling Tenant agrees to pay the difference to the Debtors or the Successor Owners, as applicable, within fourteen (14) days of the Debtors' or Successor Owners', as applicable, receipt of ERAP funds on behalf of such Settling Tenant.

[*For Settling Tenants with Net Arrearage Obligations Who are Vacating the Apartment:*] The Settling Tenant agrees to fully vacate and surrender the Apartment in which the Settling Tenant resides (including the vacation of all Co-Habitants, if any, and any other individuals residing in the Apartment) and deliver the Apartment vacant and broom-clean not later than thirty (30) days after the Settlement Effective Date. Upon the Settling Tenant fully vacating and surrendering the Apartment, the Settling Tenant's Arrearage Obligation shall be forgiven and released, provided the Settling Tenant has paid rent currently from the Settlement Effective Date through vacation of the Apartment.

10.    ERAP/Rent Relief.

[*To the Extent the Settling Tenant is a Current Tenant and is Eligible to Apply for ERAP:*] The Settling Tenant acknowledges and agrees that promptly following the Settlement Effective Date [he/she] shall apply for payments pursuant to the New York State Emergency Rental Assistance Program ("ERAP"). Counsel to the Settling Tenant ("MLS") agrees to assist the Settling Tenant in applying for ERAP payments. At the direction of the Successor Owners, the Debtors and/or LoanCore, the Property Managers (as defined in the Plan) will designate a point-person to directly provide MLS with information reasonably available to the Property Managers for the Settling Tenant to apply for ERAP. In the event the Successor Owner receives payments from ERAP, promptly following receipt of such payments, the Settling Tenant will receive an additional rent credit or cash payment, at the Successor Owners' discretion, equal to 40% of the amount of the ERAP payments actually received by the Successor Owners for the Settling Tenant (the "40% ERAP Credit").

[*If the Settling Tenant Does Not Qualify for ERAP:*] The Settling Tenant represents, after consultation with [his/her] counsel, that [he/she] is not eligible to participate in ERAP.

11.    Repair Conditions. The Settling Tenant acknowledges and agrees that as of the date of this Agreement there are no outstanding unremedied repairs including those reported through the management office (the "Reported Repairs") and/or Housing Maintenance Code violations on record with the New York City Department of Housing Preservation and Development (the "HPD Repairs") for the Apartment, save the following: [*Settling Tenant to List Outstanding Reported Repairs*] (collectively, the "Open Repairs"). The Debtors or the Successor Owners, as applicable, shall perform repairs to correct the Open Repairs in the individual apartment of the Settling Tenant within thirty (30) days of the Settlement Effective Date, subject to the Settling Tenant providing the Successor Owners with reasonable access to the Apartment; *provided*, that for the purposes of this [paragraph 11], "reasonable access" shall mean access at a date and time proposed by the Successor Owners that is reasonably acceptable to the Settling Tenant proposed on no less than 48 hours' notice and in accordance with the Rules of the City of New York title 28, Sec. 25-101 ("28 RCN 25-101"), unless the Settling Tenant agrees to provide access to the Successor Owners on shorter notice and/or on terms not otherwise in accordance with 28 RCN 25-101. After completing the Open Repairs, the Debtors or the Successor Owners, as applicable, shall request a dismissal inspection by HPD to confirm that all violations have in fact been removed. To the extent that HPD marks any violation as "not complied," or otherwise indicates that such violation still exists following repairs, or if the outstanding repair has not been completed, the Debtors or the Successor Owners, as applicable, shall be required to correct any

such remaining violation or outstanding repair within thirty (30) days of HPD's inspection, subject to the Settling Tenant providing the Debtors or the Successor Owners, as applicable, with reasonable access to the Apartment.  For any and all Open Repairs, the Debtors or the Successor Owners, as applicable, shall request an inspection with the Settling Tenant to confirm all such outstanding Open Repairs have been resolved, subject to the Settling Tenant providing the Debtors or the Successor Owners, as applicable, with reasonable access to the Apartment.  In the event the Settling Tenant fails to provide the Debtors or the Successor Owners, as applicable, with reasonable access to the Apartment for inspection or repairs, the terms and conditions of this [paragraph 11] to the Agreement shall be of no force and effect and the Debtors or the Successor Owners, as applicable, shall maintain all rights at law and equity to pursue remedies against the Settling Tenant for [his/her] failure to provide the Debtors or the Successor Owners, as applicable, with reasonable access to the Apartment.  If upon inspection, the Settling Tenant and the Debtors or the Successor Owners, as applicable, do not agree that the Open Repairs have been satisfactorily completed, the Debtors or the Successor Owners, as applicable, shall be required to correct any such remaining Open Repair within thirty (30) days of the inspection, subject to the Settling Tenant providing the Debtors or the Successor Owners, as applicable, with reasonable access to the Apartment. In the event that the Debtors or the Successor Owners, as applicable, fail to comply with their obligations under this paragraph, and subject in all respects to the Settling Tenant providing reasonable access to the Apartment, the Settling Tenant may seek from this Court, or any other court or administrative body of competent jurisdiction, an order requiring specific performance of this Agreement as well as any damages resulting from such noncompliance. Nothing contained herein shall limit the Debtors' or Successor Owners', as applicable, obligations under applicable law and the Lease to remedy any Reported Repair, HPD Repair, Open Repair, or any other repair condition arising in the apartment or the subject building arising after the date of this Agreement or the Settling Tenant's rights in respect thereof.

12.     Co-Habitants.  The Settling Tenant represents that no individual other than the Co-Habitants does currently or has resided at the Apartment during the past 24 months.

13.     Release by the Settling Tenant.   Subject to the occurrence of the Settlement Effective Date, the Settling Tenant, on behalf of [himself/herself], and [his/her] heirs, executors, administrators, successors, assigns, agents, representatives, counsel, and insurers, releases and forever discharges each of the Debtors, LoanCore, and the Successor Owners and their respective parents, subsidiaries, affiliates, predecessors, successors, assigns (whether by operation of law or otherwise), and with respect to any of the foregoing, each of their respective current and former officers, directors, employees, agents, advisors, equity holders (regardless of whether such interests are held directly or indirectly), consultants, property managers (including, but not limited to, the Property Managers (as defined in the Plan)), representatives, counsel, partners, accountants, investment bankers, insurers, and other professionals, each acting in such capacity and any person claiming by or through any of them (including their respective officers, directors, employees, managers, advisors, and professionals) (collectively, the "Landlord Released Parties") from all claims, counter-claims, cross-claims, debts, liens, encumbrances, security interests, interests, liabilities, obligations, demands, damages, charges, accounts, losses, claims in bankruptcy, law suits, obligations, setoffs, costs and expenses (including attorneys' fees and costs), remedies, actions and causes of action of whatever kind, nature, or description, from the beginning of time through and including July 31, 2021 (the "Release Date"), whether known or unknown, suspected

or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that the Settling Tenant has, may have or claim to have now or which may hereafter arise which arise or relate to the (a) Tenant Claim, (b) the Arrearage Obligation, if any, (c) the Settling Tenant's lease and occupancy of the Apartment (the "Lease"); and (d) any other transaction, relationship or agreement entered into in connection therewith or in connection with the Settling Tenant's residency at the Apartment under which claims or obligations heretofore have been asserted or could have been asserted by the Settling Tenant against the Landlord Released Parties.  Notwithstanding anything to the contrary in this Agreement, nothing contained in this [paragraph 13] shall act as a release of any claims by the Settling Tenant that arise on or after the Release Date against the Successor Owners in respect of the Settling Tenant's continued occupancy of the Apartment from and after the Release Date, whether under the Lease or applicable law, including claims for post-Release Date rent-setting.  For the avoidance of doubt, the releases contained in this [paragraph 13] of the Agreement shall not effect a release of the Landlord Released Parties' obligations under this Agreement.

> **The Settling Tenant acknowledges that this Agreement includes a release of all known and unknown claims and that [he/she] hereby expressly waives and relinquishes all rights with respect to his release of any unknown claims.**

14.    <u>Release by the Debtors, LoanCore, and the Successor Owners</u>.  The Debtors, LoanCore and the Successor Owners, on behalf of themselves, and their respective parents, subsidiaries, affiliates, predecessors, successors, assigns (whether by operation of law or otherwise), and with respect to any of the foregoing, each of their respective current and former officers, directors, employees, agents, advisors, equity holders (regardless of whether such interests are held directly or indirectly), consultants, property managers (including, but not limited to, the Property Managers (as defined in the Plan)), representatives, counsel, partners, accountants, investment bankers, insurers, and other professionals, each acting in such capacity and any person claiming by or through any of them (including their respective officers, directors, employees, managers, advisors, and professionals) release and forever discharge the Settling Tenant and the Co-Habitants and their heirs, executors, administrators, successors, assigns, agents, representatives, counsel, and insurers (collectively, the "Settling Tenant Released Parties"), from all claims, counter-claims, cross-claims, debts, liens, encumbrances, security interests, interests, liabilities, obligations, demands, damages, charges, accounts, losses, claims in bankruptcy, law suits, obligations, setoffs, costs and expenses (including attorneys' fees and costs), remedies, actions and causes of action of whatever kind, nature, or description, from the beginning of time through the Release Date, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that the Debtors, LoanCore, and/or the Successor Owners have, may have or claim to have now or which may hereafter arise which arise or relate to the (a) Tenant Claim, (b) the Arrearage Obligation, if any, (c) the Settling Tenant's lease and occupancy of the Apartment, i.e., the Lease, and (d) any other transaction, relationship, or agreement entered into in connection therewith or in connection with the Settling Tenant's residency at the Apartment under which claims or obligations heretofore have been asserted or could have been asserted by the Debtors, LoanCore, and/or the Successor Owners against the Settling Tenant Released Parties.  Notwithstanding anything to the contrary in this Agreement, nothing contained in this [paragraph 14] shall act as a release of any claims by the Debtors, LoanCore, and/or the Successor Owners in respect of the

Settling Tenant's continued occupancy of the Apartment from and after the Release Date, whether under the Lease or applicable law, including claims for post-Release Date rent-setting.  For the avoidance of doubt, the releases contained in this [paragraph 14] of the Agreement shall not effect a release of (i) the Settling Tenant Released Parties' obligations under this Agreement and (ii) in the event the Rent Forgiveness is of no force and effect as provided in [paragraph 4] of this Agreement, the Arrearage Obligation and any other unpaid amounts preserved under [paragraph 4].

15.    <u>Co-Habitants' Release</u>.    Each of the Co-Habitants shall execute and deliver a release in favor of the Debtors, LoanCore, and the Successor Owners in the form attached hereto as Exhibit A.

16.    <u>Binding Effect</u>.    Unless waived or otherwise agreed to in writing by the Parties, until (a) this Agreement is executed by all parties hereto, (b) each Co-Habitant has executed the Co-Habitants' releases, and (c) this Agreement is approved by a final order of the Court (collectively, the "Conditions to Effectiveness"), this Agreement shall not be binding on the Parties and the Co-Habitants' releases shall not be binding on the Co-Habitants and nothing contained in this Agreement or the Co-Habitants' releases shall be construed to be an admission of any party and neither this Agreement, the Co-Habitants' releases nor any reference to it or them may be introduced in any action or proceeding relating to the subject matter of this Agreement.  Following the occurrence or waiver of each of the Conditions to Effectiveness, this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successor and assigns.

17.    <u>Contingency</u>.    If the Court does not approve this Agreement or if the Court's approval is subsequently reversed or vacated on appeal, this Agreement shall be null and void and inadmissible for any and all purposes in relation to any litigation commenced in the Court or otherwise.

18.    <u>Entire Agreement</u>.    This Agreement constitutes the entire agreement and understanding of the Parties regarding the Agreement and the subject matter thereof, and can only be modified by a writing signed by the Parties and approved by the Court.

19.    <u>Notices</u>.    Notices, consents, and other communication provided for herein shall be in writing and provided by email and mail/overnight or hand delivery as follows:

a.    if to the Debtors, at 203 W 107 Street LLC, 210 W 107 Street LLC, 220 W 107 Street LLC, 230 W 107 Street LLC, 124-136 East 117 LLC , 215 East 117 LLC, 231 East 117 LLC, 235 East 117 LLC, 244 East 117 LLC, East 117 Realty LLC, and 1661 PA Realty LLC, 1 Battery Park Plaza, Suite 3100 New York, New York 10004, Attention: Ephraim Diamond, Chief Restructuring Officer, and with copy to Backenroth Frankel & Krinsky LLP, 800 Third Avenue, 11th Floor, New York, New York, 10022, Attention: Mark Frankel.

b.    if to LoanCore, at LoanCore Capital Credit REIT LLC, c/o LoanCore Capital, 55 Railroad Avenue, Suite 100, Greenwich, Connecticut 06830, Attention: Brett

Kaplan, and with copy to Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, New York 10019, Attention: Benjamin Mintz.

c. if to the Successor Owners, at 203 W 107 Street Owner LLC, 210 W 107 Street Owner LLC, 220 W 107 Street Owner LLC, 230 W 107 Street Owner LLC, 124-136 East 117 Owner LLC, 215 East 117 Owner LLC, 231 East 117 Owner LLC, 235 East 117 Owner LLC, 244 East 117 Owner LLC, East 117 Realty Owner LLC, and 1661 PA Realty Owner LLC, c/o LoanCore Capital, 55 Railroad Avenue, Suite 100, Greenwich, Connecticut 06830, Attention: Brett Kaplan, and with copy to Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, New York 10019, Attention: Benjamin Mintz.

d. if to the Settling Tenant, at [_____], with copy to [_____].

20.   <u>Future Assurances</u>.  The Parties hereto agree to execute such documents as may be reasonably required to effectuate the transactions contemplated by this Agreement.

21.   <u>Successors and Assigns</u>. This Agreement shall be binding upon the Parties hereto and their respective successors and/or assigns.

22.   <u>No Admission of Liability</u>. The Parties hereto understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission of guilt, wrongdoing, liability, or noncompliance with federal, state or local law, statute, order or regulation, tortious act, breach of contract, violation of common law, or any other wrongdoing whatsoever.

23.   <u>Construction</u>. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the document to be drafted. Each Party warrants that it has been represented and advised by counsel or has had a full opportunity to be represented and advised by counsel with respect to this Agreement and all matters covered by it.

24.   <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and evidence of this Agreement may be exchanged by fax or by electronic transmission of a scanned copy of the signature pages or by exchange of originally signed documents, each of which shall be as fully binding on the Parties as a signed original.

25.   <u>Authority</u>. Each person who executes this Agreement represents that he or she is duly authorized to execute this Agreement.

26.   <u>Enforcement of Agreement</u>. If this Agreement is challenged by any third party after the Settlement Effective Date, each of the Parties to this Agreement will take such actions that are reasonably requested by the other Party to assure that the rights and obligations established by this Agreement are upheld and enforced.

27.    <u>Jurisdiction</u>. The Parties agree that the Court shall retain jurisdiction to interpret, implement and enforce the provisions of this Agreement pursuant to the laws of the State of New York and the Bankruptcy Code.

[*Signatures Begin on the Following Page*]

DATED: [_____ __], 2021

ACEEPTED AND AGREED:

203 W 107 STREET LLC
210 W 107 STREET LLC
220 W 107 STREET LLC
230 W 107 STREET LLC
124-136 EAST 117 LLC
215 EAST 117 LLC
231 EAST 117 LLC
235 EAST 117 LLC
244 EAST 117 LLC
EAST 117 REALTY LLC
1661 PA REALTY LLC


By:     _____
Name:  _____
Title:   _____
Dated  : _____



LOANCORE CAPITAL CREDIT REIT LLC,
on behalf of itself and each SUCCESSOR OWNER
owned or controlled by LOANCORE CAPITAL CREDIT REIT LLC


By:     _____
Name:  _____
Title:   _____
Dated  : _____



THE SETTLING TENANT


By: _____
Name: _____
Dated: _____


13

## Exhibit A

**Co-Habitant Release of the Debtors, LoanCore, and the Successor Owners**

## CO-HABITANT RELEASE

By this release, made as of [_____ __], 2021 (the "Co-Habitant Release"), the Co-Habitant releases and forever discharges 203 W 107 Street LLC, 210 W 107 Street LLC, 220 W 107 Street LLC, 230 W 107 Street LLC, 124-136 East 117 LLC, 215 East 117 LLC, 231 East 117 LLC, 235 East 117 LLC, 244 East 117 LLC, East 117 Realty LLC, and 1661 PA Realty LLC (collectively, the "Debtors"), LoanCore Capital Credit REIT LLC ("LoanCore"), 203 W 107 Street Owner LLC, 210 W 107 Street Owner LLC, 220 W 107 Street Owner LLC, 230 W 107 Street Owner LLC, 124-136 East 117 Owner LLC, 215 East 117 Owner LLC, 231 East 117 Owner LLC, 235 East 117 Owner LLC, 244 East 117 Owner LLC, East 117 Realty Owner LLC, and 1661 PA Realty Owner LLC (collectively, the "Successor Owners")[1] from certain claims and causes of action pursuant to the terms of that certain settlement agreement, made as of [_____ __], 2021 (the "Agreement"),[2] by and among the Debtors, LoanCore, the Successor Owners, and [_____] (the "Settling Tenant," together with the Debtors, LoanCore, and the Successor Owners, the "Settling Parties").

## RECITALS

WHEREAS, on [_____ __], 2021, the Settling Parties executed the Agreement; and

WHEREAS, this Co-Habitant Release is being granted by the Co-Habitant pursuant to the terms of the Agreement.

NOW THEREFORE, for good and sufficient consideration, receipt of which is hereby acknowledged, the Co-Habitant hereby unconditionally agrees as follows:

1.      The Co-Habitant, on behalf of [himself/herself], and [his/her] heirs, executors, administrators, successors, assigns, agents, representatives, counsel, and insurers, releases and forever discharges each of the Debtors, LoanCore, and the Successor Owners and their respective parents, subsidiaries, affiliates, predecessors, successors, assigns (whether by operation of law or otherwise), and with respect to any of the foregoing, each of their respective current and former officers, directors, employees, agents, advisors, equity holders (regardless of whether such interests are held directly or indirectly), consultants, property managers (including, but not limited to, the Property Managers (as defined in the Plan)), representatives, counsel, partners, accountants, investment bankers, insurers, and other professionals, each acting in such capacity and any person claiming by or through any of them (including their respective officers, directors, employees, managers, advisors, and professionals) (collectively, the "Landlord Released Parties") from all claims, counter-claims, cross-claims, debts, liens, encumbrances, security interests, interests, liabilities, obligations, demands, damages, charges, accounts, losses, claims in bankruptcy, law suits, obligations, setoffs, costs and expenses (including attorneys' fees and costs), remedies, actions and causes of action of whatever kind, nature, or description, from the beginning of time

---

[1] A more fulsome description of the Successor Owners including, but not limited to, their names and their legal characteristics is provided in the *Plan Supplement for the Fourth Amended Joint Plan of Liquidation of the Debtors* [ECF No. 90].

[2] Unless otherwise noted, the terms and conditions used but not otherwise defined in this Co-Habitant Release shall have the meanings ascribed to such terms in the Agreement.

through the Release Date, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that the Co-Habitant has, may have or claim to have now or which may hereafter arise which arise or relate to the (i) Tenant Claim, (ii) the Arrearage Obligation, if any, (iii) the Co-Habitant's occupancy of the Apartment under the terms of the Settling Tenant's Lease; and (iv) any other transaction, relationship or agreement entered into in connection therewith or in connection with the Co-Habitant's residency at the Apartment under which claims or obligations heretofore have been asserted or could have been asserted by either the Co-Habitant and/or the Settling Tenant against the Landlord Released Parties.  Notwithstanding anything to the contrary in this Co-Habitant Release, nothing contained in this paragraph 1 shall act as a release of any claim by the Co-Habitant that arises on or after the Release Date against the Successor Owners in respect of the Co-Habitant's continued occupancy of the Apartment from and after the Release Date, whether under the Lease or applicable law, including claims for post-Release Date rent-setting.

> **The Co-Habitant acknowledges that this Co-Habitant Release includes a release of all known and unknown claims and that [he/she] hereby expressly waives and relinquishes all rights with respect to his release of any unknown claims.**

2.      The Co-Habitant agrees that the Court shall retain jurisdiction to interpret, implement and enforce the provisions of this Co-Habitant Release pursuant to the laws of the State of New York and the Bankruptcy Code.

3.      In the event of any dispute with respect to the applicability, interpretation or enforcement of this Co-Habitant Release or the Agreement, the Co-Habitant expressly consents to the jurisdiction of the Court.

DATED: [_____ __], 2021

ACKNOWLEDGED AND AGREED:

THE CO-HABITANT


By: _____

Name: _____

Dated: _____