UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re:<br><br>203 W 107 STREET LLC et al.,<br><br>Debtors | Case No. 20-12960 (LGB)<br>Chapter 11<br>Jointly Administered |
| 203 W 107 STREET LLC et al.,<br><br>Plaintiffs,<br><br>- against –<br><br>KELLNER HERLIHY GETTY & FRIEDMAN LLP, et al.,<br><br>Defendants. | Adv. Proc. No. 22-01114(LGB) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE COMPLAINT**

KELLNER HERLIHY GETTY & FRIEDMAN, LLP
470 Park Avenue South—Seventh Floor
New York, New York 10016-6951
Telephone: (212) 889-2121
Email: dak@khgflaw.com

*Attorneys for Defendants*

Of Counsel:

Douglas A. Kellner
Berenice Le Diascorn

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii-iii

PRELIMINARY STATEMENT ................................................................................. 1

STANDARD OF REVIEW ........................................................................................ 2

ARGUMENT .............................................................................................................. 3

I.     THE DEBTORS IMPROPERLY SEEK TURNOVER OF
ASSETS THAT ARE NOT PROPERTY OF THE ESTATE .................... 3

II.    THE DEBTORS IMPROPERLY SEEK DECLARATORY
REMEDY ................................................................................................... 6

III.    THE DEBTORS FAIL TO ALLEGE HOW THE
ESCROWED FUNDS ARE PROPERTY OF THE ESTATE
FOR WHICH KHGF VIOLATED THE AUTOMATIC
STAY AND WHICH ARE SUBJECT TO USE AS A CASH
COLLATERAL .......................................................................................... 8

IV.    DEBTORS' CLAIM FOR AN ACCOUNTING IS MOOT ..................... 14

V.    JOSEPH VATTAKKAVEN IS NOT A PROPER
DEFENDANT ........................................................................................... 15

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

*99 Commercial Street, Inc. v. Goldberg*, 811 F. Supp. 900, 905
(S.D.N.Y. 1993)..................................................................................  9

*156 East 37th St LLC v. Eichner*, 62 Misc3d 1216A (Civ. Ct. 2019)......................  5

*Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*, 527 B.R. 126, 133
(S.D.N.Y. 2014)..................................................................................  9,10

*Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 53, 529
N.Y.S.2d 279, 281 (1st Dep't 1988)................................................  7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..................................................  2,6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................  2

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)............................  2

*City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 589 (2021) ..............................  13

*Corris v. 129 Front Co.*, 85 A.D.2d 176, 447 N.Y.S.2d 480
(1st Dept. 1982) ................................................................................  14

*Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 432
(S.D.N.Y.2002), aff'd, 346 F.3d 357 (2d Cir. 2003)...........................  7,8

*Fourth Fed. Sav. Bank v. 32-22 Owners Corp.*, 236 A.D.2d 300
(1st Dep't 1997) ................................................................................  5

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*,
66 N.Y.2d 38, 43-46 (1985) ..............................................................  12

*In re Brizinova*, 588 B.R. 311, 327 (Bankr. E.D.N.Y. 2018)....................................  3

*In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 711–12
(Bankr. S.D.N.Y. 2018) ....................................................................  3,7,8

*In re Fairfield Sentry* [*Ltd. Litig.,*] 458 B.R. [665,] 683 (S.D.N.Y. 2011) ..................  4

*In re Liddle*, 608 B.R. 356, 363–64 (Bankr. S.D.N.Y. 2019)
aff'd, 613 B.R.18 (S.D.N.Y. 2020)....................................................  10

*In re Miller*, 335 B.R. 335 (Bankr. E.D. Pa. 2005)....................................................  10,11

*In re Pali Holdings, Inc.*, 488 B.R. 841, 852 (Bankr. S.D.N.Y. 2013) ......................  4,6

*James v. Alderton Dock Yards*, 256 N.Y. 298, 305, 176 N.E. 401
(N.Y. 1931) ........................................................................................  7

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)....................  3

*Martin-Trigona v. Shiff*, 702 F.2d 380 (2d Cir. 1983) ............................................  15

*Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014)................................  2

*McCarthy v Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ............................  2

*Park West Management Corp. v. Mitchell*, 47 N.Y.2d 316,
   391 NE.2d 1288, 418 N.Y.S.2d 310 (Ct. App. 1979) ............................................ 14

*Russman v. Board of Education*, 260 F.3d 114, 118 (2d Cir. 2001) .......................... 15

*Savage v. Mandl (In re Teligent)*, 325 B.R. 134, 137–38
   (Bankr.S.D.N.Y.2005) ................................................................................. 4,6

*Shea & Gould v. Red Apple Companies, Inc. (In re Shea & Gould)*,
   198 B.R. 861, 867 (Bankr.S.D.N.Y.1996) ..................................................... 4,6

*Solow v. Wellner*, NYLJ 7/2/90, p. 29, col. 2 (Civ. Ct., N.Y. Co.) ........................ 10

*Solow v. Wellner*, 86 N.Y.2d 582,658 N.E.2d(1995) ............................................. 10

*Stewart v. Nynex Corp.*, 78 F. Supp. 2d 172, 180 (S.D.N.Y. 1999) ......................... 15

*Travelers Indemnity Co. of Conn, v. Losco Group, Inc.*,
   150 F.Supp.2d 556, 561 (S.D.N.Y. 2001) ...................................................... 12

*Walsh v. Andorn*, 33 N.Y.2d 503, 507, 355 N.Y.S.2d 329,
   311 N.E.2d 476 (1974)......................................................................................... 7

*Whitby Operating Corp. v. Schleissner*, 117 Misc.2d 794
   (Sup. Ct., N.Y. Co. 1982) ..................................................................................... 5

## <u>STATUTES, RULES, & OTHER AUTHORITIES</u>

11 U.S.C. § 362 .................................................................................................... 9,13

11 U.S.C. § 363 ................................................................................................ 9,12,14

11 U.S.C. §§ 542 ...................................................................................................... 3

Bankruptcy Code § 542 ........................................................................................... 5

Declaratory Judgment Act (28 U.C.S. § 2201)....................................................... 7

Federal Rules of Bankruptcy Procedure Rule 7012 ............................................... 1

Federal Rules of Civil Procedure 12(b)................................................................. 1,2

New York Multiple Dwelling Law § 302-a ......................................................... 1,12

New York Real Property Actions and Proceedings Law § 711 ............................... 8

New York Real Property Law § 235-e(d) ................................................................ 8

United States Constitution, Article III ................................................................... 14

Defendants submit this memorandum of law in support of their motion to dismiss the Debtors' adversary complaint (ECF no. 1) pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5) and 12(b)(6), as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

The Debtors have failed to assert any claim upon which relief may be granted by this Court, therefore their adversary complaint must be dismissed. Turnover claims are not a proper vehicle to liquidate a legitimate contract dispute. Even assuming the truth of the allegations in the complaint, which the tenants vigorously challenge, the Debtors acknowledge that there were substantial breaches of the warranty of habitability, making it plain that there must be a proper adjudication of the tenants' defenses, counterclaims and setoffs.

Likewise, a declaratory judgment claim is inappropriate where the plaintiff has an adequate, alternative remedy—to sue for the unpaid rent in accordance with the various New York laws that govern the collection of rent, affording tenants all the rights, defenses, and protections of New York law. Indeed, the use of a claim for declaratory judgment against the tenants' attorneys, is a transparent, backdoor effort to avoid the obligation to plead the amount of rent due from each defendant tenant, frustrating the tenants' right to invoke the provisions of New York Multiple Dwelling Law § 302-a.

The Debtors are not parties to the escrow agreement between the tenants and their attorneys.  The tenants' attorneys' fiduciary obligation is only to the clients. The tenants' funds deposited with their attorneys are no more "property of the estate" than funds that the tenants deposit in their personal bank accounts.

Accordingly, each of the seven causes of action in the adversary complaint should be dismissed for failure to state a cause of action.

The complaint names tenant Joseph Vattakkraven as a defendant even though he never deposited any funds into the rent strike escrow, and even though he is current in his rent payments to building management. In addition, he was not properly served with the summons. Regardless how the Court rules on the seven causes of action, the Court should dismiss Mr. Vattakkraven as a defendant.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The court may consider only well-pled factual allegations. See *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). It must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted). A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

"Plausibility…depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the

existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). "Accordingly, courts are not required to draw unreasonable inferences or to credit legal conclusion at odds with the plaintiff's own factual allegations." *In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 711–12 (Bankr. S.D.N.Y. 2018)

## ARGUMENT

### I.    THE DEBTORS IMPROPERLY SEEK TURNOVER OF ASSETS THAT ARE NOT PROPERTY OF THE ESTATE

Debtors' first, third, and fourth causes of action seek turnover of monies deposited by the tenants in an escrow account held by KHGF and of certain distributions of these monies to KHGF and former tenants under 11 U.S.C. §§ 542(a)-(b). Adversary Complaint at ¶¶57-63, 70-83.

Ordinarily, three elements are necessary "to state a claim under Section 542(a). These are: (1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate." *In re Brizinova*, 588 B.R. 311, 327 (Bankr. E.D.N.Y. 2018) (citations omitted).

Yet, an additional element precedes this analysis:  the asset subject to turnover must be property of the estate. Indeed,

> the turnover power can be improperly invoked, especially when it is used as a Trojan Horse for bringing garden variety contract claims; when the property in question is not already property of the estate; or when the turnover statute is used to recover assets with disputed title when the estate's claim of ownership is legitimately debatable. It is well established that the turnover power may not be used for such purposes.

*In re Pali Holdings, Inc.*, 488 B.R. 841, 852 (Bankr. S.D.N.Y. 2013). "That the turnover

power be properly invoked is integral to the bankruptcy court's ability to

constitutionally exercise its *in rem* jurisdiction in entering a final judgment." *Id*.

It is well settled that that the debtor cannot use the turnover provisions to

liquidate contract disputes or otherwise demand assets whose title is in dispute. *Id.*,

citing several illustrating cases:

> [*In re*] *Fairfield Sentry* [*Ltd. Litig.*,] 458 B.R. [665,] 683 [(S.D.N.Y. 2011)]
> ("Numerous courts have therefore held that an action is non-core when
> property which is the subject of a significant dispute between the parties is
> sought to be recovered through a turnover action.... These actions are
> subject to significant dispute, resolution of which will determine whether
> the funds redeemed are in fact property of the Funds' estates.") (citations
> and internal quotations omitted; emphasis added); *Savage v. Mandl (In re
> Teligent)*, 325 B.R. 134, 137–38 (Bankr.S.D.N.Y.2005) (Bernstein, C.J.)
> ("*Teligent*") (citing "settled law that the debtor cannot use the turnover
> provisions to liquidate contract disputes or otherwise demand assets
> whose title is in dispute"; other law holding that an action to determine
> the amount of a claimed debt to the estate that is, as yet, wholly disputed
> and unliquidated cannot properly be styled an action to turn over estate
> "property"; and other law holding that an action should be regarded as a
> turnover "only when there is no legitimate dispute over what is owed to
> the debtor") (citations omitted); *Shea & Gould v. Red Apple Companies, Inc.
> (In re Shea & Gould)*, 198 B.R. 861, 867 (Bankr.S.D.N.Y.1996) (Garrity, J.)
> (issuing report and recommendation, instead of final judgment, in
> debtor's action to recover fees for legal services rendered to the debtor,
> where court was doubtful that claim was sufficiently "specific in its terms
> as to amount due and date payable," and observing that "[a] turnover
> action may be inappropriate where the debtor's claim lacks such
> certainty").

Here, Debtors are demanding the turnover of what they identify as "Monthly

Rent." Yet, the Adversary Complaint pleads that the rent strike commenced in 2019 and

has been ongoing, due to serious violations by the Debtors affecting the habitability of

the tenants' apartments. Adversary Complaint ¶¶27-29. On its face, the Adversary

Complaint therefore plainly acknowledges that there is a dispute as to whether or not

rent is owed to the Debtors, and if so, how much is due. In fact, the Debtors expressly

admit that at least "15 open HPD violations remain outstanding at the 107th Street Properties" giving rise to the tenants' right to abatements of rent. *Id.* ¶36.

The Debtors' plead only legal conclusions that the Debtors have any interest in the funds the tenants have voluntarily deposited with their attorneys. They do not and cannot allege that the Debtors are parties to any agreement governing the escrow. Contrary to the Debtors' conclusory assumption, the tenants have not paid rent into the KHGF escrow account. Because the Debtors are not parties to the agreement between the tenants and their attorneys, the Debtors have no greater right to the rent strike escrow than the Debtors have to funds the tenants have deposited into their personal bank accounts. The proper remedy is not turnover pursuant to Bankruptcy Code § 542, but to assert proper claims against each tenant for the amount of rent Debtors claim is due. Each of those claims should be a separate cause of action where each tenant can plead the appropriate affirmative defenses and counterclaims.

To be sure, Debtors' first cause of action demands turnover of all monies deposited in the escrow account since the inception of the rent strike, that is 2019, while Debtors' sixth cause of action expressly recognizes an "actual controversy exists…with respect to the Rent Strike" and proffers that conditions in the building improved since at least January 1, 2022. Adversary Complaint ¶94.

In effect, the Debtors are trying to evade litigation to determine the amounts tenants owe for rent by seeking a summary release of the funds without adjudicating the tenants' defenses, counterclaims and setoffs. New York courts have recognized the tenants' right to withhold their rents when there is a breach of the warranty of habitability. See e.g. *Fourth Fed. Sav. Bank v. 32-22 Owners Corp.*, 236 A.D.2d 300 (1st Dep't 1997); *Whitby Operating Corp. v. Schleissner*, 117 Misc.2d 794 (Sup. Ct., N.Y. Co. 1982); *156 East 37th St LLC v. Eichner*, 62 Misc3d 1216A (Civ. Ct. 2019).

The Debtors have failed to plead how much rent is owed by each tenant and for what period of time. It is therefore "doubtful [the turnover] claim[s are] sufficiently specific in [their] terms as to amount due and date payable," making the claims "inappropriate where the debtor's claim lacks such certainty." *Pali Holdings*, supra, citing *In re Shea & Gould*, supra.

This Court must therefore ignore any "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that there is no dispute as to the whether a debt is owed to the Debtors' estate and the escrowed funds are undisputedly estate property. *Iqbal*, supra. Indeed, "a claimed debt to the estate that is, as yet, wholly disputed and unliquidated cannot properly be styled an action to turn over estate 'property'." *Teligent*, supra.

Accordingly, the Debtors' first, third, and fourth causes of action seeking turnover of disputed assets fail to properly state a claim upon which relief can be granted and must be dismissed.

## II.    THE DEBTORS IMPROPERLY SEEK DECLARATORY REMEDY

The sixth cause of action seeks a declaratory judgment that "(i) the Rent Strike by Current Tenants is improper as of a date no later than January 1, 2022, (ii) Current Tenants' rents as of a date no later than January 1, 2022 are due and payable to the Debtors, and (iii) Current Tenants' rents as of a date no later than January 1, 2022 are property of the Debtors' estates subject to turnover under Bankruptcy Code section 542(b)." Adversary Complaint ¶ 96.

An action for declaratory judgment is improper when the proper remedy is simply to sue for the unpaid rents.

Even if it were true that there has not been a single breach of the warranty of habitability since January 1, 2022—a claim that is plainly implausible and which the

tenants vigorously dispute—the Debtors have no right to interfere with the relationship between the tenants and their attorneys.

The Declaratory Judgment Act (28 U.C.S. § 2201) gives federal courts the discretionary authority to grant declaratory relief. "But that authority is discretionary, and a declaratory judgment must serve a purpose." *In re Chowaiki,* 593 B.R. at 717. "It is usually unnecessary where a full and adequate remedy is already provided by another well-known form of action." *Id*. citing *James v. Alderton Dock Yards*, 256 N.Y. 298, 305, 176 N.E. 401 (N.Y. 1931).

Courts routinely decline to proceed with claims for declaratory judgment where the debtor has other available remedies. *Chowaiki,* cites extensive authority:

> Restatement (Second) of Judgments § 33 (1982) ("A litigant's seeking a declaratory remedy when he could have maintained a conventional action for coercive relief often signifies that he is in a quandary not only as to what his rights and duties are, but also as to how to secure their adjudication."); *Walsh v. Andorn*, 33 N.Y.2d 503, 507, 355 N.Y.S.2d 329, 311 N.E.2d 476 (1974) ("Where there is no necessity for resorting to the declaratory judgment[,] it should not be employed."); *Apple Records, Inc. v. Capitol Records, Inc*., 137 A.D.2d 50, 53, 529 N.Y.S.2d 279, 281 (1st Dep't 1988) ("A cause of action for a declaratory judgment is unnecessary and inappropriate where the plaintiff has an adequate, alternative remedy in another form of action.") (citations omitted).

Factors also considered by federal courts when determining whether to exercise jurisdiction over a declaratory judgment claim include:

> whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata [and] whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction.

*Dow Jones & Co. v. Harrods, Ltd.,* 237 F. Supp. 2d 394, 432 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003).

Here, Debtors have other available and adequate remedies—they could sue for the rent in this Court or in the New York courts. But, the Debtors' Adversary Complaint

fails to set forth the allegations necessary to sue for unpaid residential rents in New York. The Adversary Complaint fails to make the fundamental allegations of the amount owed by each tenant and the time period in arrears. *See, e.g.,* New York Real Property Law § 235-e(d) and New York Real Property Actions and Proceedings Law § 711, requiring written demand for rent before suing for rent.

Considering New York's overwhelming interest in protecting its tenants against landlords who fail to provide them with basic hygiene and security, this declaratory action would likely "increase friction between our federal and state courts and improperly encroach on state jurisdiction". *Dow Jones*, *supra*.

Further, and most importantly, requesting declaratory relief does not relieve a plaintiff from meeting the burden associated with the cause of action alleged in fact. See, e.g. *Chowaiki* 593 B.R. at 716 (analyzing under New York law the elements of a claim for intentional or fraudulent misrepresentation where plaintiff seeks a declaratory judgment that he was fraudulently induced to enter into a transaction).

The Court should insist that the Debtors plead proper causes of action to recover on their claims for rent due and owing. The tenants can then plead appropriate defenses, counterclaims and setoffs.

### III.    THE DEBTORS FAIL TO ALLEGE HOW THE ESCROWED FUNDS ARE PROPERTY OF THE ESTATE FOR WHICH KHGF VIOLATED THE AUTOMATIC STAY AND WHICH ARE SUBJECT TO USE AS A CASH COLLATERAL

The Debtors have failed to sufficiently plead how the escrowed funds are part of the bankruptcy estate. The Debtors merely recite bare legal conclusions unsupported in facts and law that the escrowed funds are "monthly rent" all the while acknowledging that hundreds of serious housing violations have occurred in at least the past 3 years warranting rent credits and abatements that would dramatically reduce any rent debt

well below any amount the tenants have decided to put in escrow. Therefore, the

Debtors' second and fifth claims for relief seeking authorization to use the escrowed

funds as cash collateral and as a basis for sanctions of a purported violation of

automatic stay must be dismissed in that they fail to state a claim upon which relief can

be granted under 11 U.S.C. §§ 362 and 363.

First, for the reasons stated above, the Debtors have failed to properly plead that

the rent strike is improper and that the tenants are not entitled to 100% rent abatement

as a matter of New York law, rendering a "monthly rent" debt null. If no debt is owed

to the Debtor, there is no estate property at all that is subject to automatic stay or can be

used as cash collateral.

Second, because the funds were held in escrow *before* the start of the bankruptcy

proceedings, are subject to a lawful right of retention, and are controlled by an

agreement to which the Debtor is not a party, the Debtors have failed to sufficiently

plead facts and law alleging that they could plausibly be estate property.

The escrow account is an account in which the tenants deposited personal funds,

in an amount *equivalent* to their rent but not constituting their rent *per se*, upon

commencing the rent strike against Debtors for their egregious building code violations

and other defects that compromised habitability of the leased premises.

"[A]n escrow is generally defined as a written instrument entrusted by a grantor

to a third party agent or trustee who, in accordance with instructions, subsequently

delivers the instrument to the grantee once certain conditions are met." *99 Commercial

Street, Inc. v. Goldberg*, 811 F. Supp. 900, 905 (S.D.N.Y. 1993). "Legal title to property

placed in escrow remains with the grantor until the occurrence of the condition

specified in the escrow agreement." *Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*,

527 B.R. 126, 133 (S.D.N.Y. 2014) (citation omitted). "Ownership in an escrow is held in

stasis, the instrument available neither to grantor nor grantee, awaiting disposition by the agent in accordance with the terms of the agreement." *In re Liddle*, 608 B.R. 356, 363–64 (Bankr. S.D.N.Y. 2019), aff'd, 613 B.R.18 (S.D.N.Y. 2020) (citation omitted).

In the case at bar, both the grantor and grantee are the tenants, and the agent is KHGF.  Legal title to the funds in the escrow account managed by KHGF belongs exclusively to Tenants. The fact that the Debtors are not in privity with the Tenants with respect to the escrow funds entrusted to KGHF means that the Debtors do not share the same legal right to the funds as the tenants. See *In re Miller*, 335 B.R. 335 (Bankr. E.D. Pa. 2005) ("'Privity' is broadly defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.").

Despite Debtors' assertion that the funds in escrow are property of the Debtors' estate, "the occurrence of the conditions the escrow agreement specifies" (*Alarmex*, supra) has not yet taken place and "ownership in [the funds] is held in stasis". *Liddle*, supra.  The escrow agreement between KHGF and the tenants provides two alternatives for releasing the funds: a court decision or "until a majority of the tenants and the attorneys agree that it is appropriate to dispense the funds." ECF no. 8-4. The Debtors have failed to allege that either of these conditions has occurred.

Judge York addressed this issue at length during the trial of seventy claims for rent against the tenants participating in a rent strike in *Solow v. Wellner,* NYLJ 7/2/90, p. 29, col. 2 (Civ. Ct., N.Y. Co.).[1] Two years earlier the court had ordered the tenants to create a bank account for deposits of their rent pending trial:

---

[1] There are nearly a dozen reported decisions in the *Solow v. Wellner* litigation, including the Court of Appeals decision at 86 N.Y.2d 582 (1995). The decision explaining escrow accounts cited in this memorandum was not appealed.

The [landlord] made several attempts to have this court require the tenants to deposit their withheld rent money. The first attempt was denied by the Appellate Term on May 5, 1988. The petitioner then sought declaratory judgments against several tenants in Supreme Court again requesting that they deposit their rent. In granting the tenants' motion to dismiss these actions, Judge David Edwards noted that the [landlord] "has found yet another way to prolong the theoretically swift litigation of a landlord-tenant nonpayment proceeding . . . [and] this court refuses to suspend all common sense to allow duplicious [sic] litigation that will further tie-up already overburdened judicial resources." (July 14, 1989).

Judge York explained:

Where tenants believe that they are not receiving the services that they are entitled to, they may, in good faith, collectively withhold rent…The landlord may commence an action to recover rent or to dispossess the tenants. In such actions tenants are not required, pre-judgment, to turn over their withheld rent or to deposit it in the court's control….Once the court has determined that there is no basis to exercise jurisdiction over the tenants' deposits, the tenants are free to deal with those deposits, including interest as they desire.

The Debtors' whole complaint in the case before this Bankruptcy Court relies on their conclusory assumption that the funds tenants paid to their attorneys' escrow are monthly rent that is property of the estate.  Because there has been no adjudication that rent is owed to the Debtors, there is no basis in fact or law for the conclusion that these funds are property of the Debtor. The tenants have escrowed funds *equivalent* to the rent, but not the rent itself. These funds held in trust by the tenants' attorneys are the property of the tenants, who do not currently owe any liquidated debt to the Debtors, who themselves breached their contractual obligations to provide habitable housing.

The Debtors do not plead how they have privity to the escrowed funds. "'Privity' is broadly defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *In re Miller*, 335 B.R. 335 (Bankr. E.D. Pa. 2005). The Debtors are not parties to the escrow agreement, and the escrow agreement does not state conditions under which KHGF can or must transfer funds to a non-signatory or a non-party.

In addition, the Debtors have failed to allege any clause of the escrow agreement that could reasonably lead to an inference that the Debtors were intended to be a third-party beneficiary of the escrow agreement. *Accord Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 43-46 (1985); *Travelers Indemnity Co. of Conn, v. Losco Group, Inc.*, 150 F.Supp.2d 556, 561 (S.D.N.Y. 2001). The agreement is exclusively between the tenants and KHGF, and does not reference implicitly or explicitly an intention for the Debtors to benefit from it. This is particularly true in the absence of an accounting of rent credits and abatements owed by the Debtors to the tenants for their housing code violations.

Simply put, the landlord is not a party to the escrow agreement and has no right to take the funds from the escrow without a proper ruling against the tenant-depositor in a manner consistent with the protections afforded by New York law. Here, in effect, the Debtors are trying to evade litigation to determine the amounts tenants owe for rent by seeking a summary release of the funds without adjudicating the tenants' defenses, counterclaims and setoffs.

With particular regards to the Debtors' second cause of action, Debtors' failure to properly account for credits and abatements due to the tenants prevents Debtors from adequately pleading "adequate protection" of the tenants under 11 U.S.C. § 363. Indeed, under New York law, rent abatement is likely to amount to 100% of any rent owed since the inception of the rent strike (Multiple Dwelling Law § 302-a). The proposition of a cash collateral of "unused portion of the Monthly Rents" amounting to only 50% of rents collected prior to January 1, 2022 (Adversary Complaint at ¶¶68-69), while the Adversary Complaint itself admits that numerous HCD violations are still outstanding and have likely been outstanding long before the initiation of the rent strike—more than

three years ago, is on its face egregious and cannot plausibly amount to "adequate
protection" as required by the statute.

Turning to Debtors' fifth claim for relief, case law is clear that estate property
retained by an entity prior to the commencement of bankruptcy need not be turned
over without an adjudication of the rights of the parties. *City of Chicago, Illinois v. Fulton*,
141 S. Ct. 585, 589 (2021). In *Chicago*, the Supreme Court addressed the issue of whether
vehicles impounded by the City of Chicago had to be returned to their owners after
they filed for bankruptcy, or whether the City could retain the vehicles until the unpaid
fines and costs for the vehicles were paid. *Id.* The Supreme Court held that retention of
estate property does not violate 11 U.S.C. § 362(a)(3)[2] of the Automatic Stay provision if
the property was retained *prior* to the bankruptcy filing. *Id.* at 590.

Here, KHGF has an attorney's lien over the escrowed funds for payment of its
attorneys' fees, which funds were held prior to the Debtors' bankruptcy filing, thereby
exercising proper retention of the escrow account which does not violate 11 U.S.C. §
362(a)(3).

The Debtors fail to state facts or legal basis supporting KHGF's obligation to turn
over lawfully retained funds to a non-signatory of an escrow account while the
conditions of the escrow agreement have not yet realized, or to substantiate the actual
amount they estimate due under as "monthly rents" after abatements and other credits.

Accordingly, the Debtors have failed to state claims under 11 U.S.C. §§ 362 and
363, and Debtors' second and fifth claims for relief must be dismissed.

---

[2] § 362(a)(3) states "a) Except as provided in subsection (b) of this section, a petition filed under section
301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor
Protection Act of 1970, operates as a stay, applicable to all entities, of—
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise
control over property of the estate;"

## IV.    DEBTORS' CLAIM FOR AN ACCOUNTING IS MOOT

The Seventh Cause of Action fails to plead any basis for Debtors' claim to invade

the relationship between the tenants and their attorneys. The tenants have a right to

contract with their attorneys on the terms of the engagement of the attorneys and the

tenants' attorneys have no fiduciary obligation to the tenants' landlord.

Judge York addressed this issue at length in *Solow v. Wellner,* supra, and

explained:

> [The order requiring rents be deposited in the tenants' attorney's escrow
> account] was modified on August 19, 1988 by requiring deposits of rents
> as of September 1, 1988 into a tenant controlled account with tenants'
> attorneys to provide monthly records of amounts on deposit. … A prior
> attempt to obtain an accounting of the deposits in the Supreme Court was
> struck down by Justice Edwards on the ground that a fiduciary
> relationship did not exist between the [landlord] and the tenants' attorney.

The landlord moved for an accounting of the deposits and for tracing of funds

distributed for payment of the tenants' attorneys' fees. Judge York pointed out:

> Where tenants believe that they are not receiving the services that they are
> entitled to, they may, in good faith, collectively withhold rent. See
> generally, Park West Management Corp. v. Mitchell, 47 N.Y.2d 316,391
> NE.2d 1288, 418 N.Y.S.2d 310 (Ct. App. 1979) and its progeny. The
> landlord may commence an action to recover rent or to dispossess the
> tenants. Corris v. 129 Front Co., 85 A.D.2d 176, 447 N.Y.S.2d 480
> (1st Dept. 1982). In such actions tenants are not required, pre-judgment, to
> tum over their withheld rent or to deposit it in the court's control.

Judge York further explained that there was no legal authority for the landlord's

claim for an accounting of the tenants' rent strike funds, particularly because the

Supreme Court had previously denied the request "on the ground that there was no

fiduciary relationship between the [landlord] and [tenants'] attorneys."

Nevertheless, here, the tenants' attorneys have already provided accountings.

Pursuant to Article III of the United States Constitution, a dispute before the court

"must be real and live, not feigned, academic or conjectural." *Russman v. Board of*

*Education,* 260 F.3d 114, 118 (2d Cir. 2001) (holding "if the dispute should dissolve at any time due to a change of circumstances, the case becomes moot"). The hallmark of a moot case or controversy is that the relief sought can no longer be given or it is no longer needed. *Martin-Trigona v. Shiff*, 702 F.2d 380 (2d Cir. 1983). "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission." *Stewart v. Nynex Corp.*, 78 F. Supp. 2d 172, 180 (S.D.N.Y. 1999).

## V.    JOSEPH VATTAKKAVEN IS NOT A PROPER DEFENDANT

The complaint names tenant Joseph Vattakkaven as a defendant even though he never deposited any funds into the rent strike escrow, and even though he is current in his rent payments to building management. In addition, he was not properly served with the summons. Regardless how the Court rules on the seven causes of action, the Court should dismiss Mr. Vattakkaven as a defendant.

## CONCLUSION

For the reasons stated above, the Court should dismiss Debtors' Adversary Complaint.

Dated: August 5, 2022

Respectfully submitted,

KELLNER HERLIHY GETTY & FRIEDMAN, LLP

By: _____
          Douglas A. Kellner

*Attorneys for Defendants*
470 Park Avenue South—Seventh Floor
New York, New York 10016-6951
Telephone: (212) 889-2121
Email: dak@khgflaw.com

Of Counsel:

    Berenice Le Diascorn

15